# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4479

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Steven Hall, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 22, 2017
Filed: December 14, 2017

_____

Before LOKEN, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Defendant Anthony Hall appeals from a jury verdict finding him guilty of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a prohibited person in violation

of 18 U.S.C. § 922(g)(1) and 922(g)(3).[1] Hall challenges the district court's admission of factual statements from his withdrawn plea agreement, denial of his motion for a mistrial, and determination at sentencing that he was a career offender and an armed career criminal. We affirm.

## I.

During a traffic stop on April 13, 2015, police smelled marijuana and searched Hall's car, finding 64 bags of marijuana and a loaded .40 caliber handgun in the console. Hall texted his girlfriend, Kari Merwin, to come get him and stated he was "dirty." When police arrested Hall, he attempted to flee, punching one of the officers in the process.

Hall pled guilty to possession of a firearm by a prohibited person. Prior to sentencing, Hall withdrew his guilty plea. Hall was charged with possession with intent to distribute marijuana, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a prohibited person. A jury trial ensued. At trial, the government offered into evidence factual statements from Hall's withdrawn plea agreement, including Hall's admission that he knowingly possessed the handgun while unlawfully using marijuana. Before closing arguments, a juror requested an escort for the jury to their cars following trial, stating she was followed by a witness—later identified as Merwin—for about two miles as she was leaving the courthouse the previous day. Hall moved for a mistrial, which the district court denied. Instead, the court instructed the jury that the incident was a coincidence and should not influence their decisions. The jury found Hall guilty on all counts. Based on Hall's two prior drug convictions and a Texas robbery conviction, the court determined Hall was a career offender under USSG § 4B1.1(a) and an armed career

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

criminal under 18 U.S.C. § 924(e)(1). The court sentenced Hall to 360 months imprisonment.

## II.

Hall first challenges the admission of the factual statements from his withdrawn plea agreement into evidence at trial. Because a withdrawn plea agreement is generally inadmissible, our decision turns on whether Hall knowingly and voluntarily waived his rights. See United States v. Mezzanatto, 513 U.S. 196, 210 (1995). "[W]hether a waiver of rights is valid is a question of law reviewed de novo." United States v. Washburn, 728 F.3d 775, 779 (8th Cir. 2013).

Federal Rule of Criminal Procedure 11(f) states that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Under Rule 410, "a guilty plea that was later withdrawn" is inadmissible. Fed. R. Evid. 410(a)(1). However, a defendant may waive his Rule 410 rights "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily." Mezzanatto, 513 U.S. at 210. "We look to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant willfully agreed to its terms." United States v. Young, 223 F.3d 905, 909 (8th Cir. 2000) (internal quotation marks omitted).

The plea agreement Hall initialed and signed included the following provision:

> By initialing each of the following paragraphs, defendant stipulates to the following facts. Defendant agrees these facts are true and may be used to establish a factual basis for defendant's guilty plea and sentence. Defendant has been advised by defendant's attorney of defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant waives these rights and agrees this stipulation may be used against defendant at any time in any proceeding

-3-

should defendant violate or refuse to follow through on this plea agreement, regardless of whether the plea agreement has been accepted by the Court.

This language makes clear that if Hall were to later withdraw his guilty plea, the statements of fact in the plea agreement could be used against him at any time in any proceeding. By initialing additional provisions, Hall acknowledged that he had read the entire agreement with assistance of counsel, understood his rights, and entered into the agreement freely and voluntarily. See Washburn, 728 F.3d at 780 (upholding similarly worded Rule 410 waiver in plea agreement); see also Young, 223 F.3d at 911 (upholding Rule 410 waiver in plea agreement).

Hall claims the Rule 410 waiver was not knowing because he had no knowledge of his Rule 410 rights when he signed the agreement. To the contrary, Hall confirmed at the plea hearing that his attorney reviewed the plea agreement with him in detail before he signed it and that he understood all of the information contained in the agreement. When the court asked if he had any questions, Hall responded, "You've explained everything. My lawyer's explained everything." See Washburn, 728 F.3d at 781-82 (finding Rule 410 waiver in plea agreement was knowing even where court did not confirm defendant's understanding). Hall's attorney further confirmed that he explained every paragraph of the plea agreement, adding that his practice is to explain the Rule 410 waiver in every case as he is well aware of its importance. See Young, 223 F.3d at 911 (agreeing with government's argument that "implicit in advice regarding the consequences of foregoing a right is the knowledge that a right exists").

Hall also claims the waiver was involuntary because his attorney pressured him into accepting the agreement and he did not have adequate time to consider his decision. However, Hall acknowledged at the plea hearing that the agreement was voluntary and that no one forced or pressured him into signing it. At a pretrial

hearing, Hall's attorney testified he met with Hall multiple times to discuss the agreement, he told Hall he had a "triable case," and he did not pressure Hall into signing the agreement.

Thus, the record does not support Hall's claim that he entered into the agreement unknowingly and involuntarily. See id. (finding Rule 410 waiver valid where there was no evidence agreement was unknowing or involuntary). When Hall initialed and signed the plea agreement, "he was aware of the benefits he was securing, the rights he was foregoing, and the consequences of breaching the agreement." See id. We conclude that the Rule 410 waiver was valid and the district court did not err in admitting the plea agreement's factual statements into evidence.

III.

Hall next challenges the denial of his motion for a mistrial. Hall claims the jury was improperly influenced by a juror's statement that she was followed by a defense witness for approximately two miles as she was leaving the courthouse. Based on this incident, the juror requested an escort for the jury to their vehicles following trial. We review a district court's denial of a motion for mistrial for an abuse of discretion. United States v. Brandon, 521 F.3d 1019, 1026 (8th Cir. 2008).

"The Sixth Amendment right to trial by an impartial jury means trial by a jury that is not tainted or influenced by third-party communication, contact, or tampering." United States v. Harris-Thompson, 751 F.3d 590, 596 (8th Cir. 2014). When a district court learns of an incident that may have improperly influenced the jury, "it 'should determine the circumstances, the impact [of the improper contact] upon the juror[s], and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.'" Id. (alterations in original) (quoting Remmer v. United States, 347 U.S. 227, 230 (1954)). "We give the district court broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the

-5-

effect of any possible prejudice." United States v. Urqhart, 469 F.3d 745, 749 (8th Cir. 2006) (internal quotation marks omitted). The ultimate question is: "Did the intrusion affect the jury's deliberations and thereby its verdict?" United States v. Honken, 541 F.3d 1146, 1167 (8th Cir. 2008) (internal quotation marks omitted).

Upon learning of the incident, the district court spoke with the juror involved in the presence of Hall, Hall's counsel, and counsel for the United States. The juror told the court that "[i]t was probably nothing" and suggested the witness was probably just going the same direction. The juror further stated that the incident would not affect her ability to be fair and impartial. The government noted on the record that "She seemed very casual. She was not nervous. She was not upset." The district court agreed that the incident was probably just a coincidence. After properly engaging in the inquiry required by Remmer, the district court concluded that the incident would not affect the jury's verdict. We find the district court did not abuse its discretion in reaching this conclusion. See Harris-Thompson, 751 F.3d at 598.

Moreover, at defense counsel's request, the district court instructed the jury that the incident "was a coincidence and should not cause concern for any of you as to your personal safety . . . [and] should not influence in any way the decision that you reach in this case." We presume the jury followed the court's curative instruction. United States v. Pendleton, 832 F.3d 934, 944 (8th Cir. 2016) (citation omitted).

We therefore affirm the district court's denial of Hall's motion for a mistrial.

IV.

Finally, Hall challenges the district court's determination that Hall was an armed career criminal under 18 U.S.C. § 924(e)(1) and a career offender under USSG § 4B1.1(a). Hall argues he did not have the requisite number of predicate convictions

because his 2003 Texas conviction for second-degree robbery does not qualify as a "violent felony" under the Armed Career Criminal Act (ACCA) nor as a "crime of violence" under the Federal Sentencing Guidelines. We review de novo whether a conviction qualifies as a "violent felony," United States v. Shockley, 816 F.3d 1058, 1062 (8th Cir. 2016), or a "crime of violence," United States v. Harrison, 809 F.3d 420, 425 (8th Cir. 2015). Because they have "nearly identical definitions, we construe 'violent felony' under [the ACCA] . . . and 'crime of violence' under the Guidelines as interchangeable." United States v. Mata, 869 F.3d 640, 644 (8th Cir. 2017) (internal quotation marks omitted).

The ACCA classifies an armed career criminal as a defendant who has three prior convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). Under what has come to be known as the "force" clause, "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . [that] has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 924(e)(2)(B)(i). Federal law defines "force" under this statute as "*violent* force—that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010). At a minimum, the amount of force used must be "that degree . . . necessary to inflict pain." Id. at 143.

Under the Federal Sentencing Guidelines, a career offender is a defendant who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). The Guidelines define a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 4B1.2(a)(1).

In determining whether Hall's Texas robbery conviction is a "violent felony" under the ACCA and a "crime of violence" under the Guidelines, we must first

determine whether to apply the categorical approach—used when an indivisible statute lists alternative means of committing a single crime—or the modified categorical approach—used when a divisible statute lists alternative elements to define multiple crimes. See Mathis v. United States, 136 S. Ct. 2243, 2248-49 (2016). Under Texas law, second-degree robbery occurs when, "in the course of committing theft . . . and with intent to obtain or maintain control of the property, [a person]: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02 (2002). Hall contends the statute is indivisible (the government does not suggest otherwise), and both parties agree that we should apply the categorical approach. Thus, we assume, without deciding, that the robbery statute is indivisible and apply the categorical approach. See Shockley, 816 F.3d at 1063 (requiring categorical approach if statute is indivisible).

Under the categorical approach, "we 'look only to the fact of conviction and the statutory definition of the prior offense.'" Id. (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)). In discerning the statutory definition of the offense, we are bound by prior interpretations by the state's highest court. See Johnson, 559 U.S. at 138. The ultimate question is whether the state statute "has as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(e)(2)(B)(i), which is "force capable of causing physical pain or injury to another person." Johnson, 559 U.S. at 140.

A conviction for Texas second-degree robbery requires either actual bodily injury or a threat thereof. See United States v. Davis, 487 F.3d 282, 286 (5th Cir. 2007) ("The defining feature of robbery under the Texas statute is the actual or threatened assaultive conduct." (citing Purser v. State, 902 S.W.2d 641, 647 (Tex. App. 1995))). Indeed, "to constitute the crime of robbery, there must be violence, or intimidation of such character that the injured party is put in fear." Devine v. State,

786 S.W.2d 268, 271 (Tex. Crim. App. 1989) (en banc) (internal quotation marks omitted). At a minimum, "[s]o long as the defendant's actions are of such nature as in reason and common experience is likely to induce a person to part with his property against his will, any actual or perceived threat of imminent bodily injury will satisfy this element of the offense." Howard v. State, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011) (footnote omitted) (internal quotation marks omitted). Because there must be actual bodily injury or "actual or perceived threat of imminent bodily injury," id., Texas second-degree robbery "has as an element the use, attempted use, or threatened use of [violent] physical force," which "is force capable of causing physical pain or injury to another person," Johnson, 559 U.S. at 140.

Hall claims Texas applies its robbery statute to conduct falling short of violent force because the Texas statute encompasses not only explicit threats, but also "perceived threats" of bodily harm. See Howard, 333 S.W.3d at 138. Hall points to Howard, where the defendant neither confronted the victim nor knew of the victim's presence when robbing a convenience store. Id. Because the victim observed the defendant through a one-way window, there was no direct confrontation between the victim and the defendant. Id. However, as Howard makes clear, any "perceived threat" under the Texas statute must be based on the defendant's conduct that intentionally or knowingly "places another in fear of imminent bodily injury or death." See id.; see also Houston-Randle v. State, 499 S.W.3d 912, 915 (Tex. App. 2016) (finding "requisite fear must arise from the conduct of the defendant"). This Court has held that similar conduct constitutes a "violent felony" under the ACCA. See United States v. Schaffer, 818 F.3d 796, 798 (8th Cir. 2016) (finding "intent to cause fear in another of immediate bodily harm or death" constitutes violent felony under force clause (internal quotation marks omitted)). The Model Penal Code's definition of robbery likewise encompasses "implied threat[s] sought to be communicated to the victim by the actor's conduct," such as "where the actor brandishes a weapon or otherwise displays the ability and the intention to use force if his wishes are not honored." Model Penal Code § 222.1, Commentaries, vol. 2, at

Regardless of whether the defendant in <u>Howard</u> directly confronted the victim or knew for certain of the victim's presence, the defendant's conduct—robbing a convenience store while concealing his face and aggressively wielding a rifle—intentionally or knowingly communicated the threat of violent physical force. We therefore find that a conviction for Texas second-degree robbery requires at least as much violent force as required by <u>Johnson</u>.

Accordingly, Hall's 2003 Texas robbery conviction constitutes a "violent felony" under the force clause of the ACCA and a "crime of violence" under the Guidelines. When this robbery conviction is combined with Hall's felony drug convictions, Hall has three prior convictions "for a violent felony or a serious drug offense," making him an armed career criminal under the ACCA, 18 U.S.C. § 924(e)(1), as well as "at least two prior felony convictions of either a crime of violence or a controlled substance offense," making him a career offender under the Guidelines, USSG § 4B1.1(a). We thus affirm Hall's sentence.

V.

For these reasons, we affirm.

_____