# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1954
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Leon Weckman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: September 25, 2020
Filed: December 16, 2020
_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Following a joint trial, a jury convicted Christopher Leon Weckman of one count of bank robbery, in violation of 18 U.S.C. § 2113(a), and acquitted Weckman's co-defendant. Weckman appeals, arguing the district court[1] erred by

---

[1]The Honorable Robert Pratt, United States District Judge for the Southern District of Iowa.

failing to sever the trials, in instructing the jury, and in addressing juror misconduct. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

At roughly 4:00 p.m. on September 25, 2017, Weckman entered the Tradesman Community Credit Union in Des Moines, Iowa, wearing a blue rain poncho with a tear in the shoulder, striped pants, gloves, and a covering over his face. At least two tellers were working at this time, and three customers were present, one of whom had a child. Weckman approached the tellers, demanded money, and placed what appeared to be a make-shift bomb on the counter. The supposed bomb was cylindrical and had wires protruding out of it. The tellers complied with Weckman's demands and placed approximately $1,600 in his duffle bag. The money included GPS-enabled fake currency, referred to as "bait bills"— the modern-day equivalent of dye packs.

Weckman fled the credit union on a bicycle, and the "bait bills" began sending real-time location, speed, and direction data to law enforcement. Weckman abandoned his bicycle just minutes from the credit union and entered a red Ford Explorer driven by Jennifer Nelson, Weckman's co-defendant. Law enforcement encountered the couple as they made their way into a neighborhood on the southside of Des Moines. As Nelson briefly stopped the vehicle, Weckman exited and ran for the surrounding residential yards with a duffle bag. Law enforcement eventually caught Weckman emerging from a nearby driveway. As law enforcement apprehended Weckman and placed him in handcuffs, Weckman declared, "You got me."

Meanwhile, law enforcement stopped Nelson in the Ford Explorer. Upon searching the vehicle, law enforcement discovered a torn, blue poncho; striped pants; work gloves; a face covering; and "Ty-vek" tape.

The duffle bag was not on Weckman's person when he was apprehended, so law enforcement searched for it, concerned the bomb threat might be legitimate. An officer found the bag roughly 20 yards away from Weckman in a recycling bin. The bomb squad arrived and x-rayed the supposed bomb. The x-ray revealed that the supposed bomb included a large battery, wires, rolls of coins, a circuit board, and a clock. Law enforcement also noted the use of "Ty-vek" tape on the device. Unable to determine whether the device was an actual explosive, the bomb squad destroyed the "bomb" in a controlled fashion. Law enforcement found other materials used in the robbery and the stolen money in the duffle bag. Later investigation of the "bomb" revealed that it was not a "viable explosive device."

Law enforcement later searched Weckman's residence and discovered materials similar to those identified in the "bomb," including wires, batteries, "Ty-vek" tape, circuit boards, and clock mechanisms. The investigation also revealed incriminating communications from Weckman to Nelson leading up to the robbery. A grand jury subsequently indicted Weckman for one count of aggravated bank robbery, with the lesser-included offense of bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). The grand jury also indicted Nelson under the theory of aiding and abetting, in violation of 18 U.S.C. § 2.

Weckman and Nelson were tried together. In his defense, Weckman argued that he was merely at the wrong place at the wrong time, caught in a criminal act orchestrated by Nelson and a third party, "Doober." He attempted to establish that the investigation was deficient and that he acted in an incriminating manner only because he was violating his parole conditions. Nelson argued that she did not knowingly aid and abet Weckman; rather, she picked Weckman up without any knowledge of the robbery. She argued that the government's case against her was riddled with reasonable doubt and that if Weckman did have an aider and abettor, one of several other uninvestigated individuals was the more probable co-conspirator. Weckman claimed that these defenses were antagonistic and moved for severance on the last day of trial. The district court construed the request as one for a mistrial and denied the motion.

Ultimately, the jury convicted Weckman of the lesser-included offense of bank robbery and acquitted Nelson outright. The district court sentenced Weckman to 180 months imprisonment, to be followed by 36 months supervised release. Weckman now appeals on three bases: (1) Nelson's defense became mutually antagonistic to Weckman's, necessitating severance; (2) the final jury instructions impermissibly modified the "intimidation" element of bank robbery from an objective inquiry into a subjective one; and (3) a juror's dismissal for alleged misconduct failed to cleanse the remaining jury of the resulting prejudice against Weckman.

## II.

Weckman first argues that Nelson's defense was antagonistic to his own and the district court erroneously denied his motion to sever their trials. "We review a district court's denial of a motion to sever for an abuse of discretion." United States v. Nichols, 416 F.3d 811, 816 (8th Cir. 2005).

"[T]here is a strong presumption against severing trials." United States v. Kramer, 768 F.3d 766, 770 (8th Cir. 2014). "[T]o warrant severance[,] a defendant must show 'real prejudice'; that is, 'something more than the mere fact that he would have had a better chance for acquittal had he been tried separately.'" Nichols, 416 F.3d at 816 (quoting United States v. Mickelson, 378 F.3d 810, 817-18 (8th Cir. 2004)). "[A] [d]efendant[] may show real prejudice to [his] right to a fair trial by demonstrating that [his] defense is irreconcilable with a co[-]defendant's defense, or the jury will be unable to properly compartmentalize the evidence as it relates to the separate defendants." United States v. Young, 753 F.3d 757, 777 (8th Cir. 2014).

Irreconcilable or mutually antagonistic defenses "may be so prejudicial in some circumstances as to mandate severance." Zafiro v. United States, 506 U.S. 534, 538 (1993). However, "[m]utually antagonistic defenses are not prejudicial *per se*." Id. "'Antagonistic' defenses require severance only when there is a danger that the jury will unjustifiably infer that *this conflict alone demonstrates that both are*

*guilty*." United States v. Sandstrom, 594 F.3d 634, 644 (8th Cir. 2010) (quoting United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996)). Thus, we must first find that there is a "conflict," meaning that Weckman's and Nelson's defenses were logically incompatible. See Nichols, 416 F.3d at 816-17. Even if the parties are logically incompatible, we must next find that "this conflict alone" served as the basis of the jury's verdict. See Sandstrom, 594 F.3d at 644. "[C]o-defendants do not suffer prejudice simply because one co-defendant's defense directly inculpates another, or it is logically impossible for a jury to believe both co-defendants' defenses." Nichols, 416 F.3d at 816 (quoting United States v. Blankenship, 382 F.3d 1110, 1125 (11th Cir. 2004)). "The government may nonetheless offer sufficient evidence that both [defendants] are guilty independent of the parties' antagonism." Young, 753 F.3d at 778; Sandstrom, 594 F.3d at 645-46.

First, we find that the defendants' defenses are not logically incompatible such that a conflict exists. Weckman argued that Nelson and "Doober" committed the robbery without his knowledge and that he was merely an ignorant scapegoat riding in the car. He attempted to justify his incriminating behavior by explaining that he was afraid of being caught violating parole conditions—i.e., driving without a license and smoking marijuana. As framed in her closing, Nelson argued that even if the jury accepted the government's case against Weckman, reasonable doubt existed as to Nelson's involvement. Nelson sought to cast uncertainty on evidence offered against her and place the investigation into doubt by highlighting other potential aider and abettors whom law enforcement failed to investigate. However, Nelson's theory did not force the jury to reject Weckman's theory of the case. The jury could have found that Weckman lacked knowledge of the robbery *and* that reasonable doubt existed as to Nelson's guilt, acquitting both co-defendants.

Second, we do not find that such alleged conflict served as the basis for the jury's verdict. The government offered sufficient evidence for the jury to convict Weckman independent of Nelson's argument. See Sandstrom, 594 F.3d at 645. The government submitted video, photographic, and testimonial evidence depicting the then-unidentified robber in distinct clothing—i.e., a grey hoodie, a blue rain poncho

with a tear in the shoulder, striped pants, and work gloves—during the robbery. This evidence further showed that the robber used a bomb-like object and placed the money in a duffle bag. The GPS-enabled "bait bills" tracked the robber in real time, leading law enforcement to follow a red Ford Explorer. Law enforcement viewed a man with a duffle bag exiting the vehicle and pursued him into a neighborhood. Upon apprehension, law enforcement identified the man as Weckman, and Weckman declared, "You got me."

Law enforcement then retraced Weckman's steps, discovering a duffle bag in a recycling bin only 20 yards away. The bag contained a bomb-like object consisting of a large battery, clock, circuit board, and "Ty-vek" tape. Law enforcement found a grey hoodie, a blue rain poncho with a tear in the shoulder, striped running pants, work gloves, and "Ty-vek" tape in the Ford Explorer. At Weckman's residence, law enforcement discovered circuit boards, clocks, batteries, and "Ty-vek" tape similar to those objects used to create the "bomb." This evidence strongly tied Weckman to the robbery, leading us to conclude that "it was the government's evidence—not any perceived conflict between [Weckman's and Nelson's] defense theories—that was the basis for the jury's verdict[]." Id. at 646. Therefore, Weckman has failed to demonstrate real prejudice to his right to fair trial on the basis that the two defenses were irreconcilable.

We next examine whether the jury could compartmentalize the evidence. "[I]n reviewing the 'consideration of the jury's ability to compartmentalize the evidence against the joint defendants, we consider 1) the complexity of the case; 2) if one or more defendants were acquitted; and 3) the adequacy of admonitions and instructions by the trial judge.'" Nichols, 416 F.3d at 817 (quoting United States v. Pherigo, 327 F.3d 690, 693 (8th Cir. 2003)).

Here, the case against Weckman and Nelson was not complex. See, e.g., id. (finding that a multi-state fraud scheme with antagonistic defendants was not too complex for the jury's ability to compartmentalize evidence). The district court instructed the jury to "give separate consideration to the evidence about each

Defendant," and to "consider the charged count separately against each Defendant." R. Doc. 123, at 12. We presume that jurors follow the district court's instructions. See United States v. Patterson, 684 F.3d 794, 799 (8th Cir. 2012). Moreover, the jury demonstrated its ability to carefully consider the evidence specific to Weckman by acquitting him of aggravated bank robbery, the greater offense. While the jury acquitted Nelson outright, we cannot say that the joint trial inhibited the jury's ability to properly compartmentalize the evidence against each defendant. We find that the district court's failure to sever the defendants' trials did not prejudice Weckman's right to a fair trial; therefore, the district court did not abuse its discretion.

III.

Weckman next argues that the district court's jury instructions impermissibly transformed bank robbery's "intimidation" element from an objective inquiry into a subjective one. "We typically review a challenge to jury instructions for an abuse of discretion. Where a party fails to object to an instruction at trial, however, we review only for plain error." United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011).[2] Here, Instruction No. 12, read:

DEFINITION: "FORCE AND VIOLENCE, OR BY INTIMIDATION"

The phrase "by force and violence, or by intimidation" means by either: (1) the use of actual physical strength or actual physical

_____

[2]Weckman argues that this Court should review the jury instructions de novo. We review instructions de novo "when the refusal of a proffered instruction simultaneously denies a legal defense." United States v. Bruguier, 735 F.3d 754, 757 (8th Cir. 2013) (quoting United States v. Young, 613 F.3d 735, 744 (8th Cir. 2010)). However, we review the mere formulation of those instructions for an abuse of discretion. See id. Regardless, we review both types of challenges only for plain error when the party fails to properly object. See United States v. Spencer, 592 F.3d 866, 873 (8th Cir. 2010) (foregoing de novo review); Poitra, 648 F.3d at 887 (foregoing abuse of discretion review).

violence; *or (2) doing some act or making some statement to put someone in fear of bodily harm.*

The term "intimidation" means doing something that would make an ordinary person fear bodily harm.

The Government must prove beyond a reasonable doubt that the Defendant or a person acting with the Defendant knowingly and deliberately did something or knowingly and deliberately said something that would cause a reasonable person under those circumstances to be fearful of bodily harm.

R. Doc. 123, at 17 (emphasis added). Weckman alleges the emphasized phrase in the first paragraph impermissibly describes a subjective standard. See United States v. Yockel, 320 F.3d 818, 824 (8th Cir. 2003) (noting that "intimidation is measured . . . under an objective standard"). While Weckman's originally proposed instructions omitted this emphasized phrase, Weckman objected at the final jury instruction conference only on the basis that the *second* paragraph was duplicative of the third. The government argued to retain the paragraph because it clarified the element's objective standard. Now, Weckman argues that his objection properly preserved objection to the emphasized language on appeal.

Parties must make objections to jury instructions with enough clarity "to inform the trial judge of possible errors so that he [or she] may have an opportunity to correct them." See Brown v. Sandals Resorts Int'l, 284 F.3d 949, 954 n.6 (8th Cir. 2002) (alterations in original) (quoting Meitz v. Garrison, 413 F.2d 895, 899 (8th Cir. 1969)). "[T]he mere tender of an alternative instruction without objecting to some specific error in the trial court's charge or explaining why the proffered instruction better states the law does not preserve the error for appeal." Lincoln Composites, Inc. v. Firetrace USA, LLC, 825 F.3d 453, 462 (8th Cir. 2016) (quoting Horstmyer v. Black & Decker, (U.S.), Inc., 151 F.3d 765, 772 (8th Cir. 1998)). Here, Weckman's alternative instruction and his objection based on redundancy did not reasonably inform the district court of the error now urged on appeal such that the

district court had an opportunity to correct the instruction. Therefore, we review the district court's final jury instruction for plain error. See id.

"Plain error review requires [the defendant] to show (1) an error, (2) that was 'plain,' (3) 'affects substantial rights,' and (4) 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Rush-Richardson, 574 F.3d 906, 910 (8th Cir. 2009) (quoting United States v. Olano, 507 U.S. 725, 735-36 (1993)). "A jury instruction is plainly erroneous if it misstates the law." United States v. Fast Horse, 747 F.3d 1040, 1042 (8th Cir. 2014). "Jury instructions are adequate if, 'taken as a whole, [they] adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government.'" United States v. Rice, 449 F.3d 887, 895 (8th Cir. 2006) (alteration in original) (quoting United States v. Sherer, 653 F.2d 334, 337 (8th Cir. 1981)).

While the at-issue paragraph here might not have clearly instructed the jury to apply an objective test to the intimidation element, the second and third paragraphs removed any ambiguity. Both latter paragraphs clearly articulate that the jury must find that the government proved beyond a reasonable doubt that the defendant acted in a manner to "cause a *reasonable person under those circumstances* to be fearful of bodily harm." R. Doc. 123, at 17 (emphasis added). We find that, taken as a whole, the instruction adequately advised the jury of the correct test and did not misstate the law; therefore, the district court's instruction was not erroneous, much less plainly in error.

IV.

Finally, Weckman argues that the district court improperly dealt with an incident of alleged juror misconduct that occurred during trial. On the third morning of trial before court was convened, a juror approached the FBI case agent assigned to this robbery investigation and gave him a "challenge coin," a gold coin depicting St. Michael, the patron saint of law enforcement, and the FBI seal. The government

brought the interaction to the district court's attention only minutes after the incident. The district court quickly held a hearing on the incident, where Weckman moved for a mistrial. The district court acknowledged Weckman's motion; dismissed the juror from the trial; found that the other jurors were not aware of the incident, so the defendants were not prejudiced; and installed an alternate juror. The district court subsequently denied Weckman's motion. Weckman now claims the juror's actions tainted the remaining jury as to prejudice Weckman. Weckman contends that the district court's dismissal of the at-issue juror failed to purge alleged "residual prejudice" from the remaining jury and that the court should have instead granted a mistrial upon learning of the alleged improper contact. We review a district court's denial of a motion for mistrial and handling of alleged juror misconduct for abuse of discretion. See United States v. Hall, 877 F.3d 800, 805 (8th Cir. 2017); United States v. Gianakos, 415 F.3d 912, 921 (8th Cir. 2005).

"The Sixth Amendment right to trial by an impartial jury means trial by a jury that is not tainted or influenced by third-party communication, contact, or tampering." Hall, 877 F.3d at 805 (quoting United States v. Harris-Thompson, 751 F.3d 590, 596 (8th Cir. 2014)). This right is additionally threatened when a juror's own actions constitute the misconduct. See Gainakos, 415 F.3d at 921. In either case, "[w]e give the district court broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect of any possible prejudice." Hall, 877 F.3d at 806 (quoting United States v. Urqhart, 469 F.3d 745, 749 (8th Cir. 2006)); see also Gainakos, 415 F.3d at 923; United States v. Thai, 29 F.3d 785, 803 (2d Cir. 1994) ("The court has broad flexibility in such matters, especially 'when the alleged prejudice results from statements made by the jurors themselves, and not from media publicity or other outside influences.'" (citations omitted)).

Here, the district court investigated whether any prejudice to Weckman resulted from the alleged juror misconduct by conducting a hearing immediately after the incident and before court had convened that day. The district court allowed the parties to first explain the incident outside of the jury's presence. Then, the

district court immediately brought in the at-issue juror for examination by all parties. The juror testified that he gave the coin to the agent as a gesture of "good luck" and to thank him for his service. This act of appreciation to law enforcement was a regular practice for the juror. While he understood the district court's general admonition against communicating with any parties or witnesses, this was his first opportunity to thank an FBI agent in person. The juror insisted that he weighed law enforcement's and non-law enforcement's testimony equally and that he had not discussed such testimony with other jurors. The juror further denied discussing the incident with other jurors prior and subsequent to his interaction with the FBI agent. The district court then dismissed the juror from further proceedings.

The district court brought in the remaining jurors to determine whether the incident improperly influenced the rest of the jury. The district court began by reminding the jury of its mandate to refrain from interacting with any of the parties or associated individuals. The district court then inquired whether the now-dismissed juror had spoken to any of the remaining jury members about the incident or his view of the evidence. The remaining jurors denied any contact subsequent to the incident, and the parties made no objection to the district court's inquiry. Finding that the at-issue juror had not discussed the incident or evidence with the remaining jury, the district court determined that any potential prejudice to Weckman had not permeated the remaining jury and accordingly denied the motion for mistrial. We further find no evidence in the record that the juror's conduct tainted or improperly influenced the remaining jury as to prejudice Weckman. The district court was in the "far better position to weigh the effect of any possible prejudice." Hall, 877 F.3d at 807 (quoting Urqhart, 469 F.3d at 749). We find that the district court did not abuse its discretion in denying the mistrial.

V.

The judgment of the district court is affirmed.

_____