# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1632
_____

United States of America

*Plaintiff - Appellee*

v.

James Leon Guthrie

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: June 16, 2021
Filed: July 29, 2021
[Unpublished]

_____

Before GRUENDER, ARNOLD, and STRAS, Circuit Judges.

_____

PER CURIAM.

Following a jury trial, the district court[1] convicted James Guthrie of a drug-distribution offense. *See* 21 U.S.C. § 841(c)(2). His main argument on appeal is that the court should have given a different entrapment instruction. The instruction

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

he now challenges, however, is the one he proposed, and his other arguments lack merit, so we affirm.

## I.

Guthrie approached Kip Brown, Jr., his old neighbor, in a gas-station parking lot and asked if he knew anyone who might want to purchase pseudoephedrine pills. Although Brown initially said "no," Guthrie persisted, to the point that Brown finally said he might know someone and took down Guthrie's number. About fifteen minutes later, Brown spoke with the acting county sheriff and told him about the conversation. On the sheriff's suggestion, Brown called Guthrie and told him he "had a guy [who] was interested" in the pills. Acting undercover, a narcotics investigator then contacted Guthrie and told him that he wanted to buy them. They agreed to meet at a Walmart parking lot, but Guthrie was a no-show. Weeks later, he sent the investigator a text message asking if he still wanted to do business. This time, they completed the exchange.

The government charged Guthrie with, as relevant here, distribution of pseudoephedrine knowing or having reasonable cause to believe it would be used to make methamphetamine. *See* 21 U.S.C. § 841(c)(2). At trial, his defense was that he had been entrapped.

## II.

Before trial, he filed a memorandum asking for an entrapment instruction. Accompanying the memorandum was a proposed instruction that was identical in all relevant respects to the current version of the model entrapment instruction in this circuit. *See* Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 9.01 (2018).

Now, after having lost at trial, Guthrie argues that the district court abused its discretion by using the instruction he proposed. He forgets, however, that his

-2-

attorney "conceded that the Eighth Circuit pattern instruction is legally accurate," even if other formulations "would [have] be[en] more helpful to the jury." Having "request[ed] a particular instruction," Guthrie "may not challenge the giving of that instruction on appeal." *United States v. Mariano*, 729 F.3d 874, 881 (8th Cir. 2013).

We further conclude that the jury heard enough evidence to reject the defense. *See United States v. Harriman*, 970 F.3d 1048, 1057 (8th Cir. 2020) (reviewing the sufficiency of the evidence in this situation de novo), *cert. denied*, 141 S. Ct. 1111 (2021). An entrapment defense is available only when law enforcement induces an individual to carry out a crime that he was not otherwise predisposed to commit. *See United States v. Bugh*, 701 F.3d 888, 893 (8th Cir. 2012).

Here, there was evidence that Guthrie initially approached Brown about finding a buyer for the pills and later contacted the undercover narcotics investigator after the first deal fell through. Based on this evidence, the jury was free to conclude that he was not induced, *see id.* (concluding that the defendant was not induced when the crime "was his idea"), or that he was predisposed to committing the crime, *see Harriman*, 970 F.3d at 1058 (holding that the defendant was predisposed because he was the one who "contacted the purported hit man"). In either case, there was no shortage of proof.

## III.

Guthrie also complains that the district court mishandled the proceedings in two other ways. The first was by denying his pretrial "motion for an order of confidentiality." The second was by limiting the questions his attorney could ask Brown during cross-examination.

## A.

With the trial looming, Guthrie was also facing multiple sex-offense charges in Missouri. He succeeded in persuading the district court to exclude any reference

to them during trial, but it refused to go a step further and order the government to ask the state-court clerk "to change the security level" on the online case database to prevent "the public" from "view[ing] the[] pending charges."

Even if we assume that the district court had the authority to enter an order of this type, it did not abuse its discretion in refusing to do so. *Cf. Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) ("[W]e review the district court's . . . decision to seal or unseal for an abuse of discretion."). Although it did not grant the requested "order of confidentiality," it took a number of other precautions, starting with voir dire when it asked potential jurors if they had "heard or read anything about this case." Then, once the jurors were seated, the court advised them that they had to decide the case based solely on the evidence presented in court and could not research anything about the parties on the internet. *See United States v. Weckman*, 982 F.3d 1167, 1174 (8th Cir. 2020) ("We presume that jurors follow the district court's instructions."). These measures adequately protected Guthrie from the possibility that the jury's "conclusions" would be swayed by "outside influence[s]." *Skilling v. United States*, 561 U.S. 358, 378 (2010) (quotation marks omitted).

B.

We reach a similar conclusion about the limits placed on cross-examination. *See United States v. Cody*, 114 F.3d 772, 776 (8th Cir. 1997) ("review[ing] the district court's decision to limit cross-examination for an abuse of discretion"). Guthrie's attorney had hoped to impeach Brown by asking him whether he had been accused of domestic violence. The court cut off that line of questioning because "the prejudicial effect [was] just too great" and "outweigh[ed] [its] probative value." *See* Fed. R. Evid. 403.

We have no reason to question the district court's reasoning, particularly because there was no proof that Brown had ever been *convicted* of domestic violence or any other similar crime. *See United States v. Drapeau*, 414 F.3d 869, 876 (8th Cir. 2005) (leaving these types of "judgment calls" to the district court's discretion).

-4-

Moreover, allowing Guthrie's attorney to pursue this line of questioning would have distracted from the main issues in the case while doing little to call Brown's truthfulness into question. *See* Fed. R. Evid. 403; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (describing the district court's "wide latitude" to limit "cross-examination based on concerns about . . . prejudice, confusion . . . [and] marginal[] relevan[ce]"). In short, there was no abuse of discretion.

IV.

We accordingly affirm the judgment of the district court.

_____