# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-1164

———————————————

United States of America

*Plaintiff - Appellee*

v.

Travis Lawrence Ferguson

*Defendant - Appellant*

—————————

Appeal from United States District Court
for the District of Nebraska - Lincoln

—————————

Submitted: November 18, 2021
Filed: April 4, 2022

—————————

Before BENTON, KELLY, and ERICKSON, Circuit Judges.

—————————

KELLY, Circuit Judge.

A jury convicted Travis Lawrence Ferguson of conspiring to sell methamphetamine. Finding sufficient evidence to support the conviction and no

abuse of discretion in the district court's[1] evidentiary rulings or sentencing determination, we affirm.

## I.

Federal authorities charged Ferguson with conspiring to distribute and possessing with intent to distribute 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846. Ferguson was among ten defendants alleged to be involved in trafficking methamphetamine in and around Lincoln, Nebraska, between January 2015 and April 2019. The other nine defendants pleaded guilty to related crimes and served as cooperating witnesses; Ferguson was the only defendant who went to trial. Prior to trial, Ferguson moved to exclude evidence that he had sold 1.7 grams of methamphetamine to an undercover officer and confidential informant (CI) in October 2014, approximately three months prior to the beginning of the charged conspiracy. Ferguson argued evidence of the pre-conspiracy controlled buy was inadmissible character evidence and unfairly prejudicial. The district court denied the motion.

At trial, co-defendants described the frequency and quantity of their own drug sales to, and purchases from, Ferguson in individual-sale amounts ranging from one-sixteenth of an ounce to quarter-pound quantities. Several saw Ferguson with larger amounts. One witness described providing to Ferguson a cumulative amount of two pounds, and another witness described providing over a pound. Many of the co-conspirators also witnessed sales between Ferguson and others. Co-defendants further described Ferguson's knowledge of, and relationships with, members of the conspiracy, including his knowledge of persons involved in pound- or kilogram-

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

quantity out-of-state supply runs. Several of the co-conspirators testified specifically about fronting drugs to Ferguson, Ferguson's handling of distribution quantities, Ferguson's cutting of drugs for use or sale, and Ferguson's measuring of sale quantities out of larger supplies.

In addition, several co-defendants described assistance received from or offered by Ferguson, such as the use of his car for large and small transactions, help with collecting payment, and calls by Ferguson to arrange other sellers to provide methamphetamine. For example, co-defendant Anna Chernyy testified that she borrowed Ferguson's vehicle for drug sales and that Ferguson once drove her to a sale, which turned out to be to an undercover officer.

The government also called several law enforcement officers as witnesses at trial. The first officer testified that he arrested Ferguson for driving with a suspended license during the conspiracy and found a digital scale with methamphetamine residue in Ferguson's vehicle. This officer described Ferguson offering to identify persons in Lincoln with large quantities of drugs in exchange for being released with a warning. Two officers testified as to controlled buys from one of the co-conspirators. One of these officers identified Ferguson as the driver of a vehicle for a controlled buy, and the other officer described controlled buys outside Ferguson's apartment. Through these officers, the government introduced physical evidence including a digital scale, videos of controlled purchases, and the drugs themselves. Ferguson moved to exclude as irrelevant and unduly prejudicial the digital scale and drugs, but the district court denied the motion.

The officer involved in the pre-conspiracy October 2014 drug sale also testified. The officer testified that she set up the controlled purchase through a CI, and they met with Ferguson, who had a digital scale and a shard of crystal methamphetamine from which he weighed and sold a portion to the CI. The officer testified that a man named "Angel" was present during the buy. The district court

gave a limiting instruction that the testimony describing the October 2014 drug sale could be considered "only to help you decide Mr. Ferguson's knowledge, intent, or state of mind with respect to the charged conspiracy."

Ferguson testified on his own behalf, denying much of the other conspirators' testimony and asserting that his own involvement with drugs was limited to personal use or the sale or sharing of small quantities with friends or girlfriends. In addition, he emphasized his actual and attempted cooperation with law enforcement. Ferguson, in fact, offered several law enforcement officers as witnesses. The officers described Ferguson's assistance on past occasions. One of them described Ferguson as more of a "tipster" than a cooperator. In this regard, one of the co-conspirators, Lindsey Koch, also described Ferguson's prior interactions with United States Marshals. According to Koch, Ferguson provided both false and truthful information to marshals, using his communications with them to harm his competition and assist or protect his allies. On cross examination, Ferguson admitted that at the time of the October 2014 controlled buy, he "had an arrangement, . . . an agreement with the CI to get dope from Angelo Ybarra . . . so the CI could get some of that dope."

The jury found Ferguson guilty of conspiring to distribute less than 50 grams of a mixture or substance containing methamphetamine, rather than the larger amount that had been charged.

The Probation Office prepared a Presentence Investigation Report (PSR), which recommended a drug quantity for sentencing of over four kilograms based in large part on estimated amounts co-conspirators had described in transactions involving Ferguson. The PSR also recommended rejecting classification of Ferguson as a minor participant in the conspiracy. The PSR recommendations would have resulted in a total offense level of 32. Based on Ferguson's criminal history Category VI and the statutory maximum sentence of 20 years, the recommendations would

have resulted in an advisory Guidelines sentencing range of 210 to 240 months of imprisonment.

Ferguson objected to the drug quantity and minor participant recommendations. The district court overruled his minor-role objection but sustained his objection to the drug quantity, finding the relevant drug quantity for sentencing purposes to be 50 grams, in accordance with the jury's verdict. Based on a total offense level of 22, Ferguson's advisory Guidelines range was 84 to 105 months. Ferguson moved for a downward departure and, in the alternative, a downward variance, arguing that his criminal history category overstated the seriousness of his actual criminal history. Ferguson also argued he deserved substantial credit for assisting law enforcement.

The district court denied Ferguson's motion for a downward departure. Applying the § 3553(a) factors, the district court imposed an above-range sentence of 130 months. In doing so, the district court expressly noted Ferguson's extensive criminal history and emphasized that several of Ferguson's prior convictions were for assault. The district court also addressed Ferguson's assistance to law enforcement, stating, "On some days, Mr. Ferguson wants to swim with the drug fishes . . . . On other days, he wants to be an informant and a buddy to either the [Lincoln Police Department] or deputy marshals . . . . In so many ways you do play both sides of the fence to cover your bases." Ultimately, the district court described Ferguson as a low-level drug user and a "wanna be," but concluded, "[h]e certainly wasn't a minor participant by any means." Ferguson timely appealed.

II.

We review the district court's evidentiary rulings for a prejudicial abuse of discretion. United States v. Fechner, 952 F.3d 954, 958 (8th Cir. 2020); United States v. Young, 753 F.3d 757, 767 (8th Cir. 2014). "[E]vidence of controlled drug buys from co-conspirators may be admissible even when the buys did not involve the

-5-

particular drug conspiracy defendant." United States v. Espinoza, 684 F.3d 766, 778 (8th Cir. 2012). This is true because "[e]vidence of 'reasonably foreseeable buys that occurred on behalf of the conspiracy' are relevant and admissible to 'illustrate[] the extent of the conspiracy's operation.'" Id. (quoting United States v. Johnston, 353 F.3d 617, 624 (8th Cir. 2003) (per curiam)). Here, the challenged evidence stemmed from reasonably foreseeable buys and aided in proving the extent of the conspiracy. The drugs were purchased through a controlled buy from a known co-conspirator who conducted drug sales using Ferguson's cars and even received a ride from Ferguson to a buy. We find no error in the district court's admission of physical evidence of sales by other co-conspirators.

We also find no abuse of discretion in the district court admitting evidence of Ferguson's pre-conspiracy October 2014 sale of 1.7 ounces of methamphetamine to an undercover officer. Under Federal Rule of Evidence 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). When otherwise admissible, such evidence remains subject to exclusion "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. All in all, "[t]he evidence must be '(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect.'" United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006) (quoting United States v. Strong, 415 F.3d 902, 905 (8th Cir. 2005)).

The evidence at issue was extremely close in time, identical in nature, and directly relevant for nearly all of the purposes listed in Rule 404(b). Ferguson denied selling drugs other than small quantities to friends and characterized himself as a drug

user looking for a fix who helped police when he could. Two co-conspirators, however, described Ferguson weighing out smaller quantities from a larger supply he maintained for sale, just as described by the officer in the October 2014 sale. Ybarra's presence at the October 2014 transaction and Ferguson's own references to Ybarra concerning that transaction also demonstrate Ferguson's knowledge generally as to the structure and internal workings of an informal conspiracy. Further, to the extent Ferguson's defense depended on a narrative that characterized his drug activities as personal in nature or as taken in furtherance of efforts to assist the police, the October 2014 transaction was relevant to counter this position. Finally, we agree with the district court that the contested evidence was not unduly prejudicial, especially in light of the use of a limiting instruction.

Next, we conclude the evidence was sufficient to support the conviction. We reverse a conviction only if, viewing the evidence in the light most favorable to the verdict, "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. King, 898 F.3d 797, 808 (8th Cir. 2018). For a conspiracy charge, the government must prove (1) that there was a conspiracy, (2) that the defendant knew about it, and (3) that he intentionally joined it. United States v. Erickson, 999 F.3d 622, 629 (8th Cir. 2021). Ferguson's challenge of his conviction depends in large part on an impermissible reweighing of the evidence or the incorrect assertion that his limited occasional assistance to police was somehow inconsistent with a finding that he participated in the conspiracy. See United States v. Reed, 972 F.3d 946, 952 (8th Cir. 2020) (explaining jury may base its verdict on testimony of cooperating witnesses and court will not disturb jury's credibility assessments). The jury heard conflicting testimony from Ferguson and his co-conspirators, but we cannot reweigh or reexamine the credibility of witnesses on appeal. See Erickson, 999 F.3d at 630 (quoting United States v. White, 794 F.3d 913, 918 (8th Cir. 2015)).

Finally, we find no abuse of discretion in the district court's application of the 18 U.S.C. § 3553(a) factors and imposition of the 130-month sentence. See United States v. Harrell, 982 F.3d 1137, 1141 (8th Cir. 2020) (standard of review). Ferguson argues his sentence was disproportionate to his co-conspirators given his role in the conspiracy. We find this argument to be meritless, however, as the district court considered Ferguson's role within the conspiracy as a whole and based the sentence on an individualized application of the § 3553(a) factors. The district court exhibited a keen understanding of the case, the defendant, and the defendant's criminal history. The district court carefully described the rationale for its sentence and acted within its discretion by acknowledging Ferguson's difficulty with drug abuse but choosing to emphasize his history of violence. Id. (noting that a district court must consider, but need not categorically rehearse, the § 3353(a) factors and retains wide latitude to assign some factors greater weight than others).

For the foregoing reasons, we affirm the judgment of the district court.

_____