# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3513
_____

United States of America

*Plaintiff - Appellee*

v.

Armondo Bruno Heredia, Jr., also known as Mondo

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: October 17, 2022
Filed: December 15, 2022
_____

Before SMITH, Chief Judge, BENTON and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury convicted Armondo Bruno Heredia, Jr. on three counts in connection with his involvement in a methamphetamine and heroin conspiracy. The district court[1] sentenced Heredia to 149 months imprisonment, followed by a 5-year term of

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

supervised release.  Heredia appeals his conviction, arguing that the district court abused its discretion by denying his motion *in limine* and admitting certain testimony of a confidential informant (CI).  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

"We recite the facts in the light most favorable to the jury's verdict."  United States v. Galloway, 917 F.3d 631, 632 (8th Cir. 2019) (citation omitted).

In late 2017, a woman—a drug user and distributor located in Lincoln, North Dakota—contacted Julian Sanchez—a drug distributor from California—to obtain heroin and methamphetamine for the purposes of distribution in North Dakota.  The woman and two others drove to Wyoming, where they met Sanchez, who was accompanied by Robert Tabarez and Heredia.  The woman came to know Heredia by the name "Mondo."  The California group decided that they would continue with the product all the way to North Dakota; Heredia rode in the woman's vehicle.  Once the groups arrived in North Dakota, they went to Dana and Anthea Schmoker's residence, where the drugs were finally removed from the vehicle and brought into the house.  The woman subsequently distributed the product in the local area.  She stayed in contact with Tabarez after the group returned to California and continued to use him as a supplier.

By 2019, the woman had become a CI for law enforcement.  In May 2019, Tabarez contacted the CI and told her that he was on his way to North Dakota with Heredia and Marsha Caccamise.  The group traveled in two separate vehicles: a silver Chevrolet and a white Honda.  After arriving at the Schmoker residence, Caccamise observed Tabarez and Heredia trying to fix the window on the Honda's rear driver's side door, which had become inoperable.  Later, Tabarez and Caccamise took the Chevrolet to a store.

Pursuant to a tip from the CI, law enforcement located Tabarez, Caccamise, and a third individual at the store. Law enforcement observed the group make multiple stops in town. When law enforcement later stopped the group for speeding, only Tabarez and Caccamise were found in the vehicle. During the traffic stop, Tabarez was arrested for possession with intent to deliver methamphetamine based on the CI's information and the group's frequent stops in town. Caccamise consented to a search of her purse, which contained drug paraphernalia and a small amount of methamphetamine. Caccamise told law enforcement that there was a Honda at the Schmoker residence containing a large quantity of drugs. Law enforcement obtained a warrant to seize and search the Honda. The subsequent search revealed several packages of methamphetamine and black tar heroin in the rear driver's side door and marijuana and powder heroin in a fake shaving cream can. In total, over 800 grams of methamphetamine and roughly 120 grams of heroin were recovered from the vehicle. Notably, the police report detailing these events refers to a "Armondo *Ybarra*" instead of Armondo Heredia.

Subsequently, law enforcement attempted to execute an arrest warrant for Anthea Schmoker. Following a vehicular pursuit, Anthea Schmoker fled the scene on foot, leaving Dana Schmoker and Heredia in the stopped vehicle. Law enforcement arrested Heredia for an outstanding warrant and for possession of drug paraphernalia. When talking with law enforcement, Dana Schmoker identified his phone contact "Mondo Moneymaker" as Heredia. The police report detailing Heredia's arrest noted that "the suspect original[ly] believed to be Armondo Ybarra (aka Mondo) was identified as Armondo Heredia." Law enforcement sent a picture of Heredia to the CI, and she confirmed that "Heredia is the 'Mondo' [she] had previously mentioned."

Heredia was charged in a three-count indictment along with Tabarez, Dana Schmoker, and Caccamise. Count 1 charged Heredia with conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine and 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(B) and 18 U.S.C. § 2. The indictment alleged that the conspiracy began "in

or about 2018." Count 2 charged Heredia with possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. Count 3 charged him with possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.

Seven days before trial, the Government revealed the identity of the CI to Heredia. The Government informed Heredia that the CI would testify to the 2017 events, which at this point had not been disclosed to him, and would identify Heredia as a co-conspirator with Tabarez. Heredia filed a motion *in limine*, seeking to exclude the CI's testimony regarding the 2017 events and identifying Heredia in 2019. First, Heredia argued that the 2017 events were outside the scope of the indictment—which alleged that the conspiracy began "in or about 2018"—and thus not relevant under Federal Rule of Evidence 402. Heredia further argued that the last-minute disclosure of the evidence unfairly prejudiced him in violation of Rule 403. Alternatively, Heredia contended that the evidence should be excluded under Rule 404(b) as evidence of a prior bad act. Second, Heredia argued that the CI's identification of Heredia had to be excluded because the CI had previously identified Heredia as "Armondo Ybarra" in a police report. Heredia explained that he believed, based on the first police report, that the CI could identify only a "Armondo Ybarra," who he believed to be a different individual. Accordingly, he argues that the last-minute correction prohibited him from adequately investigating the CI's proper identification and thus caused him to suffer unfair prejudice, rendering the evidence inadmissible under Rule 403.

The Government responded to the motion, arguing that the 2017 events were reasonably near the span of the conspiracy alleged in the indictment. It further argued that the testimony was not barred by Rule 404(b) because it was direct evidence of Heredia's involvement in the conspiracy as opposed to evidence of prior bad acts. Furthermore, the evidence established how the CI knew Heredia and could identify him in 2019. Regarding the misidentification issue, the Government submitted documents disclosed to Heredia during discovery showing that the CI had

always referred to Heredia as "Mondo."  It argued that "Ybarra" was a name that law enforcement, not the CI, had taken from a social media account.

The district court denied Heredia's motion.  First, it found that the late 2017 (December 2017 based on the traffic ticket Heredia received in North Dakota) events were reasonably near the timeframe of the alleged 2018 conspiracy.  It further found that evidence of Heredia's presence in North Dakota in 2017 had been disclosed long enough in advance as to not unfairly prejudice Heredia under Rule 403.  It likewise found that the incident was outside the scope of Rule 404(b), given that evidence of the 2017 events explained how the conspiracy evolved and how the CI knew Heredia.  Second, it agreed that the CI had always referred to Heredia as "Mondo," not "Ybarra," so the ability of the CI to identify Heredia did not constitute surprise amounting to unfair prejudice.  The district court noted that all of the testimony would be subject to cross examination and that Heredia was permitted to attack the credibility of the identification.

The jury ultimately found Heredia guilty on all counts.  Heredia appeals his conviction on the basis of the district court's denial of his motion *in limine* and the admission of the CI's testimony.

II.

On appeal, Heredia raises the same arguments as he did before the district court: (1) that the CI's testimony regarding the 2017 events is irrelevant, unfairly prejudicial, and constitutes a prior bad act, rendering the testimony inadmissible under Rules 402, 403, and 404(b), respectively, and (2) that the CI's testimony identifying Heredia is inadmissible under Rule 403, given that he was unaware that the CI could identify him.  "We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Webster, 797 F.3d 531, 537 (8th Cir. 2015) (citation omitted).  "[A] district court's discretion in determining the admissibility of evidence is 'particularly

broad in a conspiracy trial.'" United States v. King, 898 F.3d 797, 805 (8th Cir. 2018) (alteration in original) (citation omitted).

## A.

Heredia first argues that the CI's testimony concerning the 2017 events is irrelevant such that the testimony regarding those events should have been excluded pursuant to Federal Rule of Evidence 402. Only "relevant" evidence is admissible, see Fed. R. Evid. 402, which is defined under Rule 401 as: "ha[ving] any tendency to make a fact more or less probable than it would be without the evidence" and "[being] of consequence in determining the action." Testimony establishing relationships between the co-conspirators is necessarily relevant to the conspiracy itself. That the indictment defined the conspiracy as beginning "in or about 2018" is of no moment given that the conduct occurred only one month prior—in December 2017—and that it relates to the conduct within the stated timeframe. Cf. Webster, 797 F.3d at 534 ("'Where the indictment "fully and fairly" apprises the defendant of the allegations against which he must defend, prejudice is absent and any variance is harmless error.' '[T]he use of "on or about" in an indictment relieves the government of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified.'" (alteration in original) (citations omitted)).

Heredia next argues that the testimony concerns a prior bad act and should have been excluded under Rule 404(b). Under Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Here, as the district court noted, the Government did not introduce the evidence to establish that Heredia was acting in accordance with his character but rather offered it as direct evidence establishing Heredia's participation in the instant conspiracy. See United States v. Battle, 774 F.3d 504, 511-12 (8th Cir. 2014) (finding that because the challenged evidence "'tend[ed] logically to prove [an] element of the crime charged,' it was direct evidence and was not subject to Rule

404(b)" (alterations in original) (citation omitted)). Moreover, the evidence was offered to lay the foundation for how the CI knew Heredia and was able to identify him at the 2019 drug transaction. United States v. Williams, 895 F.2d 1202, 1205 (8th Cir. 1990) ("The admission of evidence concerning prior drug dealing and usage has been approved by this circuit."); United States v. Williams, 95 F.3d 723, 731 (8th Cir. 1996) ("[E]vidence of acts that form an integral part of the crime charged is not rendered inadmissible merely because the acts are criminal in their own right but have not been charged. Otherwise, the [G]overnment would be handicapped in presenting a coherent picture of the facts of the crime in issue."). Accordingly, we find that the district court did not abuse its discretion in admitting evidence of the 2017 events over the Rule 404(b) objection.

Heredia lastly argues that the evidence should have been excluded under Rule 403 because of the last-minute disclosure of the evidence and its propensity to mislead the jury. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of," inter alia, "unfair prejudice" or "misleading the jury." While Heredia claims that he was unfairly surprised by the late disclosure of this information, Rule 403 "does not enumerate surprise as a ground for exclusion." Fed. R. Evid. 403 advisory committee's note to 1972 Proposed Rules. Instead, a motion for continuance is a more appropriate vehicle in such circumstances. See id. Even so, Heredia cannot demonstrate that he was unfairly surprised: the Government had already put Heredia on notice that it would offer evidence regarding his presence in North Dakota in 2017 by disclosing his 2017 North Dakota ticket in discovery. Nor do we find that the probative value of such evidence is substantially outweighed by any unfair prejudice or the purported danger of misleading the jury because, as noted above, it explains how the conspiracy commenced. See United States v. Ferguson, 29 F.4th 998, 1002-03 (8th Cir. 2022) (finding evidence of a pre-conspiracy drug transaction not unfairly prejudicial when the transaction was close in time, identical in nature, and otherwise relevant to the charged conduct). Accordingly, we find that the district court did not abuse its discretion in refusing to exclude the testimony of the 2017 events on this basis.

Moreover, any error in admitting the CI's testimony of the 2017 events was harmless. United States v. Red Legs, 28 F.4th 931, 935 (8th Cir. 2022) ("An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." (citation omitted)). Here, there was sufficient testimony from other individuals, including Caccamise, Anthea Schmoker, and law enforcement, to find Heredia guilty. Accordingly, because substantial evidence other than the CI's testimony supports the jury's verdict, any error in admitting the CI's testimony regarding the 2017 events was harmless and does not warrant reversal. See id. at 935-36.

B.

Heredia separately argues that the CI's identification of Heredia in 2019 should be excluded because the CI initially referred to Heredia as "Ybarra" in the police reports. He contends that he was unaware of the CI's ability to identify him until immediately prior to trial. Instead, he believed that the CI could only identify some individual named "Armondo Ybarra." Accordingly, he argues that the misidentification prohibited him from adequately investigating the CI's proper identification and thus caused him to suffer unfair prejudice. See Fed. R. Evid. 403. To the extent Heredia argues that he was unfairly surprised by the proper identification, we note again that surprise is not a proper ground for exclusion under Rule 403. See id. advisory committee's note to 1972 Proposed Rules. Even so, the Government explains—and the district court accepted—that the CI had always referred to Heredia by his nickname, "Mondo," and that the "Ybarra" moniker was initially adopted by law enforcement from a social media profile. While a May 2019 police report does refer to a "Armondo Ybarra," a subsequent report disclosed in discovery corrects the identification to "Armondo Heredia." This subsequent report further noted that the CI "indicated that Heredia is the 'Mondo' [she] had previously mentioned." Based on this evidence, the district court found that the misidentification never occurred and that Heredia's unfair-prejudice argument was

based on a factual misunderstanding of the record. After a careful review of the record, we conclude that the district court did not abuse its discretion in so ruling.

Moreover, any error in failing to exclude the testimony on this basis was harmless. See Red Legs, 28 F.4th at 935. Here, Anthea Schmoker also testified to meeting Heredia during his 2017 visit to North Dakota, and multiple others testified to his participation in the 2019 conspiracy. Again, because substantial evidence other than the CI's testimony supports the jury's verdict, any error in admitting the CI's testimony on the basis of the alleged mistaken identification was harmless and does not warrant reversal. See id. at 935-36.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

_____