

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2005

# USA v. Tyler

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3592

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Tyler" (2005). *2005 Decisions.* Paper 1486.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1486

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-3592

———————

UNITED STATES OF AMERICA

v.

CORNELL TYLER,

Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 01-cr-00429-3)
District Judge: Honorable William H. Yohn, Jr.

———————

Submitted Under Third Circuit LAR 34.1(a)
February 15, 2005

Before: SLOVITER,  AMBRO and ALDISERT, Circuit Judges

(Filed March 3, 2005)

———————

OPINION

———————

AMBRO, Circuit Judge

Cornell Tyler was convicted on May 1, 2002, by a jury of depriving a prisoner,

Dante Hunter, of his civil rights in violation of 18 U.S.C. § 242. To convict Tyler under 18 U.S.C. § 242, the Government had to establish, among other things, that Tyler's conduct deprived Hunter of a right protected by the Constitution or laws of the United States. *Id.* The jury found that Tyler had used excessive force on Hunter in violation of Hunter's right to be free from cruel and unusual punishment. *See* U.S. Const. amend. VIII. We have jurisdiction under 28 U.S.C. § 1291.

Tyler raises three issues on appeal: (1) whether the District Court erred in not granting him a new trial; (2) whether the District Court erred in not acquitting him; and (3) whether the District Court erred in not severing his trial from that of a co-defendant. Because we write exclusively for the benefit of the parties who are well acquainted with the facts and procedural posture of this case, we recount only those matters relevant to the issues before us.

Tyler's first claim is that the verdict was against the weight of the evidence and thus the trial court erred in not granting him a new trial. "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred–that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quotations omitted). Furthermore, we only reverse a district court's denial of a motion for a new trial based on a claim that the verdict was against the weight of the evidence when the court abused its discretion. *Waldorf v. Shuta*, 142 F.3d 601, 621 (3d

2

Cir. 1998).

Tyler argues that the Government failed to prove two of the elements required to establish a violation of 18 U.S.C. § 242: that Tyler acted willfully to deprive Hunter of his right to be free from cruel and unusual punishment, specifically excessive force; and that Tyler's acts resulted in bodily injury to Hunter. *Id.*

First, Tyler argues that the Government failed to prove that he willfully used excessive force. He contends that "only three witness, Hunter, [Linda] Burnette, and [Lillian] Walker, directly implicated [him] in the alleged beating of Hunter."[1] Tyler further claims that this testimony was insufficient to prove that he willfully used excessive force.

Correctional officer Linda Burnette testified as follows. She saw Tyler and other officers punching Hunter in cell #17 and Hunter did not take, to her knowledge, any offensive action. She ordered Tyler and the other officers to stop beating Hunter and to cuff him, but no one did so. Hunter fell on the floor and Tyler and the other officers began kicking him. After running to get help, she saw Hunter crying and "bloody from head to toe" as he was escorted away.

Former correctional officer Lillian Walker corroborated parts of Burnette's account. She testified that she saw Tyler and other officers beat Hunter and kick him

---

[1]We note that the testimony of one uncorroborated witness is potentially sufficient to convict. *See United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002).

while he was on the floor in a fetal position.  She also saw Burnette come to cell #17 and heard her order the officers to stop.

While Hunter could not identify Tyler, he did corroborate Walker and Burnette's account of the beating.  He stated that he fell to the floor and that, though he did not try to hit the officers, they began kicking him.

Furthermore, inmate Stacey Culbert testified that he heard Burnette tell the officers to stop and saw two to three officers beating Hunter while he was in a defensive position.  In addition, inmate William Featherer testified that he saw officers beat Hunter in cell #17.  He also saw officers kicking Hunter while he was on the floor.

In light of all this testimony, we cannot conceive how the District Court abused its discretion in determining that Tyler willfully used excessive force.

Tyler also argues that the Government failed to prove that his acts resulted in bodily injury to Hunter.  "Bodily injury" is not defined in 18 U.S.C. § 242.  However, it is defined in identical terms in four different provisions of Title 18: §§ 831(f)(5), 1365(g)(4), 1515(a)(5), and 1864(d)(2).  These provisions define bodily injury to include "a cut, abrasion, bruise, . . . ; physical pain; . . . impairment of a function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary."  *Id.*  In *United States v. Myers*, the Eleventh Circuit adopted this definition of bodily injury for 18 U.S.C. § 242.  972 F.2d 1566, 1572-73 (11th Cir. 1992).  We also adopt this definition of bodily injury for 18 U.S.C. § 242.  We cannot determine with

4

certainty which officers caused which of Hunter's injuries. However, we can conclude that the District Court did not abuse its discretion in determining that Tyler's kicks to Hunter while he was on the floor caused "a cut, abrasion, bruise, . . . ; physical pain; . . . impairment of a function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary."

In this context, the District Court hardly abused its discretion in denying Tyler a new trial.

Tyler's second claim is that the District Court erred in not granting his motion for an acquittal. On a motion for a judgment of acquittal, a court must uphold a guilty verdict if, in viewing the evidence in a light most favorable to the government, it concludes that any rational jury could have found the defendant guilty. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Hence the standard for granting an acquittal is higher than the "weight of the evidence" standard for granting a new trial. *Cf. United States v. Cothman*, 286 F.3d 173, 175 (3d Cir. 2002) (we give particular deference to a denial of a motion for acquittal). Because we find that the District Court did not err in denying Tyler a new trial, we also find that it did not err in denying Tyler an acquittal.

Tyler's third claim is that the District Court erred in not granting him a severance from co-defendant Glen Guadalupe. Federal Rule of Criminal Procedure 14 states in part that "[i]f it appears that a defendant . . . is prejudiced by a joinder of . . . defendants . . . , the court may . . . grant a severance . . . ." Rule 14 "places the burden of showing

5

prejudice from the joinder on the defendant." *United States v. De Peri*, 778 F.2d 963, 983 (3d Cir. 1985). Even if a joint trial is likely to create a risk of prejudice to a defendant, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

The denial of a motion for severance is reviewed for abuse of discretion. *United States v. Hart*, 273 F.3d 363, 369 (3d Cir. 2001). It is not sufficient for a defendant to show that separate trials would have given him a better chance of acquittal. *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981). Instead, a defendant must show that the denial of the severance motion caused "clear and substantial prejudice resulting in a manifestly unfair trial." *Id.*

Tyler argued in the District Court that, if he was tried with Guadalupe, the jury would be influenced by evidence presented in Guadalupe's case that would otherwise be inadmissable against Tyler. On appeal, Tyler claims that he was prejudiced by two parts of Guadalupe's case.

He points first to Linda Burnette's testimony that, after she told Guadalupe that Tyler and other guards were involved in the beating, Guadalupe said that "they can't burn, they're my boys, they're my homies." Tyler claims that this testimony, combined with the testimony that he had been a part of Guadalupe's special search team, prejudiced his case.

This argument fails because there is no basis to assume that the evidence against Guadalupe would not have been admissible against Tyler in a separate trial. As the

6

District Court stated, "the testimony of Lieutenant Burnette[] would be admissible in the trial of [Tyler] because it does explain Lieutenant Burnette's change of her statement and it would be admissible for credibility purposes in a trial against [Tyler] . . . ." Burnette's testimony about the beating was inconsistent with statements she made after the incident. In a separate trial, Tyler would have no choice but to attempt to impeach Burnette with her prior inconsistent statements. The Government would then have been entitled to explain these inconsistencies in order to restore Burnette's credibility by introducing Burnette's testimony about what Guadalupe said.

The Government's theory was that Guadalupe pressured Burnette to lie about the beating in her statements after the incident. Thus the Government would have been permitted to introduce Guadalupe's statement that "they can't burn, they're my boys, they're my homies" in order to show that Guadalupe implied to Burnette that she should not say anything that would make his men "burn."[2]

Furthermore, this statement would not have been excluded as hearsay because it would not have been "offered . . . to show the truth of the matter asserted." Fed. R. Evid. 801. Rather the statement would have been admitted to show the effect on the listener, Burnette. That is, the Government would have argued that when Burnette heard this statement she would have been more likely to lie about the beating in her statements after

---

[2]Also, the fact that Tyler had been a part of Guadalupe's special search team would have been admissible in a separate trial against Tyler to show that Guadalupe had a motive to pressure Burnette to lie about the beating.

7

the incident.

In addition, the District Court gave limiting instructions to the jury. When Burnette testified that Guadalupe told her that the officers who beat Hunter "can't burn, they're my boys, my homies," the District Court instructed the jury:

> The evidence that you just heard, as to what Mr. Guadalupe said, is admissible . . . against Mr. Guadalupe, but not . . . any of the other defendants. It's only admissible as to him, since he said it, but not admissible as to anybody else. You must use it for that purpose and no other purpose.

Also, during the District Court's final charge to the jury, the Court stated:

> [Y]ou must consider each defendant separately. It is your duty to give separate and personal consideration to the case of each individual defendant. When you do so, you should analyze what the evidence in the case shows with respect to that individual defendant, leaving out of your consideration entirely any evidence admitted solely against some other defendants.

Thus, even if Burnette's statement would have been inadmissible against Tyler in a separate trial, the District Court's instructions helped reduce any potential prejudice to Tyler.

The second part of Guadalupe's case that Tyler claims he was prejudiced by is that Captain Mary Padilla was allowed to testify that, after her review of the use of force reports, she concluded in her report that policies and procedures were not followed when Hunter was beaten. Tyler argues that this testimony would not have been admissible if he

8

had been tried separately.[3]

But Padilla testified that the reason she determined that policies and procedures were not followed was not because she concluded that the officers used excessive force on Hunter.  Furthermore, the District Court instructed the jury that it should not consider as determinative of Tyler's guilt or innocence any violation of the use of force policy. Padilla's testimony only prejudiced Taylor slightly, if at all, and thus did not cause "clear and substantial prejudice resulting in a manifestly unfair trial." *Reicherter*, 647 F.2d at 400.

\* \* \* \* \*

Because the District Court did not abuse its discretion in denying Tyler a new trial or a severance from Guadalupe's trial, and because the standard for granting an acquittal is higher than the standard for granting a new trial, we affirm.

---

[3]Tyler did not raise the issue of Padilla's testimony as a reason for severance in his initial motion.

9