# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1699
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Boen

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith
_____

Submitted: January 11, 2023
Filed: February 10, 2023
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

After a jury convicted Anthony Boen, former Sheriff of Franklin County, Arkansas, of depriving two jail detainees of their constitutional rights by subjecting them to unreasonable force that resulted in bodily injury, the district court[1] sentenced

_____

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

Boen to 48 months' imprisonment, followed by 2 years of supervised release. Boen challenges both his conviction and his sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

"We recite the facts in the light most favorable to the jury's verdict." United States v. Heredia, 55 F.4th 651, 654 (8th Cir. 2022) (citation omitted).

Boen's conviction arises out of his treatment of Franklin County Jail detainees while serving as Sheriff of Franklin Country. In late 2018, then-Detective Kevin Hutchison was investigating a commercial burglary and other thefts that had occurred in Franklin County. As part of that investigation, Hutchison interviewed Brandon English, a Franklin County Jail detainee who had been booked on possession of stolen property. Hutchison interviewed English twice, but English failed to provide any pertinent information. After Hutchison informed Boen of his progress, or lack thereof, with English, Boen decided to interview English himself. Boen had Hutchison retrieve English from the jail and bring him to then-Chief Deputy Sheriff Travis Ball's office. English was placed in a chair roughly an arm's length away from Boen. Boen grabbed English's shirt and slammed him to the floor, which caused English's head to hit the linoleum floor. Boen then began to accuse English of stealing in the county, calling him a "piece of shit." Boen continued to berate English for roughly 60 seconds while grabbing his hair and poking his chest. English neither provoked the assault nor fought back. As result of the altercation, English documented bruising on his body, as well as a substantial amount of hair loss.

A few weeks thereafter, Boen was having dinner with Ball and a third individual when he received a call that Zachary Greene, another Franklin County Jail detainee, had bitten a fellow detainee. The incident was not considered an emergency, so the group finished their dinner and arrived at the jail roughly an hour and a half after the call. Boen, Ball, and the third individual made their way to the

so-called "shower room," where Greene had been housed since before the biting incident. The shower room was a room used to temporarily detain individuals when other detention cells were occupied. Because the shower room was secured only by a shower curtain—hence its name—Greene's ankle was shackled to a bench, which limited his movement to inside the room. Standing in the doorway of the shower room, Boen began speaking to Greene in an angry, elevated tone and then grabbed Greene's cup of water and threw it in his face. Greene did not react. Boen then leaned into the room and struck Greene in the face with the back of his closed fist four to five times. A dispatcher at the jail reported that the blows could be heard in the dispatch room roughly 30 to 50 feet away. After the attack, Ball noticed blood around Greene's mouth. After Ball left the shower room, Boen brought then-Deputy Dalton Miller to the shower room. Boen again hit Greene three to four times. Greene visited a nurse two days later, exhibiting bruises on his face and head.

Later, Boen learned that the FBI was investigating him for the assault on Greene and that subpoenas had been issued for witnesses to testify before a grand jury. Boen contacted Ball and explained to him that the only evidence of the attack was their testimony. He told Ball that if anyone asked, to say "that Mr. Greene jumped up and got in his face and [that Boen] had to put him back down." Later, at the direction of the FBI, Ball recorded a call between himself and Boen, where Boen again noted that he, Ball, and the third individual were the only witnesses and that it was their word against everyone else's.

In November 2019, a federal grand jury returned a three-count indictment against Boen, charging him with depriving three detainees—Justin Phillips,[2] English, and Greene—of their constitutional rights by subjecting them to unreasonable force that resulted in bodily injury, in violation of 18 U.S.C. § 242. As relevant here, § 242 states:

---

[2]The jury later acquitted Boen of the charge related to Phillips, and there is no material reference to this count on appeal.

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . and if bodily injury results from the acts committed in violation of this section . . . shall be fined under this title or imprisoned not more than ten years, or both.

Boen filed a motion in limine, requesting that the district court exclude any reference to the fact that Greene was shackled to the bench in the shower room. Boen argued that this fact might inflame the jury such that they might view the shackling in and of itself as a deprivation of Greene's rights even though it was necessary to ensure safety. In opposing the motion, the Government argued that while the shackling may not itself constitute a deprivation of Greene's rights, the fact that Greene was shackled, and thus unable to retreat when he was assaulted, was highly relevant to the excessive-force inquiry. The Government further reasoned that Boen could contextualize the need to shackle Greene based on the nature of the shower room. The district court denied the motion, noting that the fact that Greene was shackled when he was beaten was intrinsic to the reasonableness of the force used upon him. The district court explained that Boen could raise an objection at trial if he felt that the Government's references to the shackling became "gratuitous," or beyond that needed to explain Greene's defenseless position. The district court further granted the Government's competing motion in limine in part, holding that Boen could not present evidence of the victims' prior arrests or misdemeanors unless they involved dishonesty, pursuant to Federal Rule of Evidence 609(a)(2).

The case proceeded to trial. In its case-in-chief, the Government sought to introduce the jail's use-of-force and inmate-rights policies; Boen objected. The Government argued that the policies demonstrated that Boen committed his actions willfully, a necessary showing under 18 U.S.C. § 242. Boen argued, inter alia, that the Government had not shown that Boen was aware of the policies and that the jury might conflate a violation of the policies with a violation of the detainees' constitutional rights. The district court overruled Boen's objections and admitted the policies. First, it found that the policies were relevant to the question of Boen's

willfulness. Second, it gave a limiting instruction upon admission of the policies to reduce any potential confusion.

Subsequently, Boen sought to elicit testimony regarding the use of the shower room during his cross-examination of Ball; the Government objected. The district court ultimately allowed Boen to contextualize the use of the shower room in light of Franklin County Jail's overcrowding problem. However, based on its earlier ruling to exclude evidence of the victims' prior arrests and misdemeanors, the district court prevented Boen from inquiring as to why Greene specifically was being housed in the shower room.

At the close of evidence, the jury found Boen guilty only on Counts 2 and 3 of the indictment—the counts related to Boen's actions against English and Greene, respectively. Boen filed a motion for a judgment of acquittal or new trial, arguing that the evidence was insufficient to establish beyond a reasonable doubt that Boen used excessive force upon either English or Greene, especially force which resulted in bodily injury. The district court denied the motion for a judgment of acquittal, finding that the evidence was sufficient to sustain Boen's convictions on both counts. The district court further denied the motion for a new trial, finding that Boen's conviction did not amount to a miscarriage of justice.

The United States Probation Office then prepared a Presentence Investigation Report (PSR). Using the United States Sentencing Guidelines (USSG), the PSR calculated Boen's total offense level as 22 and his criminal history category as I, resulting in a Guidelines range of 41 to 51 months' imprisonment. In calculating the Guidelines range, the PSR identified Boen's base offense level as 12 because the offense involved two or more participants. See USSG § 2H1.1(a)(2). Boen objected and argued that the appropriate base offense level was 10, given that Boen acted alone. See USSG § 2H1.1(a)(3). The district court agreed, finding that the other officers were not complicit in Boen's actions.

The Government argued for the application of a two-level obstruction-of-justice enhancement pursuant to USSG § 3C1.1. The PSR did not include the enhancement, but the Government contended that the evidence adduced at trial was sufficient to establish that Boen had attempted to influence the testimony of multiple witnesses. The district court agreed. Relying solely on Ball's testimony and the recorded phone call, the district court found that, when viewed in context, Boen clearly attempted to obstruct or impede the administration of justice by persuading Ball to proffer Boen's own version of the events. The district court elected to apply the enhancement only to Count 3.

Because the above modifications offset each other, the district court nonetheless found that Boen's Guidelines range remained 41 to 51 months' imprisonment, based on a total offense level of 22 and a criminal history category of I. The Government recommended an upward variance to between 70 and 87 months' imprisonment. In response, Boen argued for a downward variance to between 18 and 24 months' imprisonment. He contended that the Guidelines did not account for the degree of the bodily injury Boen inflicted upon victims, which Boen argued was de minimis at best. Afterwards, the district court thoroughly discussed the 18 U.S.C. § 3553(a) sentencing factors and Boen's aggravating and mitigating circumstances. Ultimately, it sentenced Boen to 48 months' imprisonment on each of the counts of conviction to be served concurrently and followed by 2 years of supervised release.

Boen appeals his conviction and sentence based on numerous alleged errors. He challenges the district court's evidentiary rulings, its denial of his motion for a judgment of acquittal or new trial, and his sentence. We address each in turn.

II.

Boen first contends that the district court erred (1) by preventing him from properly contextualizing why Greene was shackled to the bench during the assault and (2) by admitting the jail's use-of-force and inmate-rights policies. "We review

the district court's decision to admit or exclude evidence for abuse of discretion . . . . 'A district court enjoys wide discretion in ruling on the admissibility of proffered evidence, and evidentiary rulings should only be overturned if there was a clear and prejudicial abuse of discretion.'" Gruttemeyer v. Transit Auth., 31 F.4th 638, 643 (8th Cir. 2022) (citations omitted).

## A.

Boen argues that the district court impermissibly restricted him from explaining to the jury that Greene was shackled to the shower room bench, not because Boen was "a raging oppressor who chains people to benches," Appellant's Br. 15, but because of the underfunding and overcrowding of the jail. As a result, he argues that the jury was permitted to view Greene's shackling as part of Boen's unreasonable force. Despite citing Federal Rule of Evidence 401 and quoting the advisory committee's notes to Rule 106, we construe Boen's argument as one rooted in Rule 403. See Appellant's Br. 13-14. Rule 403 permits the district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."

Notwithstanding any merit in Boen's arguments, any error committed by the district court was harmless: the jury was properly informed of the reasons behind the shower room and the shackling. See United States v. Johnson, 860 F.3d 1133, 1139 (8th Cir. 2017) ("We will reverse 'only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.' We will not reverse a harmless error." (citation omitted)); see also United States v. Slim, 34 F.4th 642, 648 (8th Cir. 2022) ("Evidentiary rulings are 'harmless where the same facts are presented to the jury through other evidence.'" (citation omitted)). Three Government witnesses described the shower room, explaining that detainees had to be shackled when placed there because the room was secured only by a shower curtain. Further, in its opening argument, the Government specifically stated that Greene was housed in the shower room "because of space limitations," not as punishment. And while "statements of counsel are not evidence," see Exeter

Bancorporation, Inc. v. Kemper Sec. Grp., Inc., 58 F.3d 1306, 1316 n.10 (8th Cir. 1995), these statements nonetheless contextualized the evidence and the purpose for which the Government offered it.

Finally, the district court allowed Boen to thoroughly cross-examine Ball regarding the prison's general overcrowding problem that necessitated the housing of detainees in the shower room. The district court prohibited Boen only from eliciting why Greene or detainees similar to Greene were housed there, which was barred by the district court's prior Federal Rule of Evidence 609(a)(2) ruling. To the extent Boen objects to that ruling, he articulates no discernable argument on appeal. See Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived."). Otherwise, we find the evidence elicited by the Government *and Boen* sufficient to properly contextualize Greene's housing and shackling for the jury, thus rendering any error in limiting Boen's specific line of questioning harmless.[3]

B.

Boen also makes a vague evidentiary challenge to the admission of the jail's use-of-force and inmate-rights policies, arguing that the policies were not relevant and that they confused the jury. The Government admitted the policies for the purpose of showing that Boen acted willfully in depriving English's and Greene's constitutional rights. Notwithstanding Boen's relevancy argument—based on his alleged lack of familiarity with the policies—he admits that he did not contest whether his actions were willful or whether there was cumulative evidence of his

---

[3]Assuming that Boen also takes issue with the Government's "gratuitous[]" references to the shackling, see Appellant's Br. 12-13, 15, he failed to make a related objection as instructed by the district court. We find that the district court did not plainly err in admitting these statements given their relevance to the unreasonableness of Boen's force and, as noted above, the Government's repeated contextualization of the shower room. See United States v. White Bull, 646 F.3d 1082, 1091 (8th Cir. 2011) ("If the admission of a contested piece of evidence was not timely objected to at trial, however, we review for plain error.").

willfulness. Accordingly, any error in admitting the policies on the basis of relevancy is harmless. See United States v. Melton, 870 F.3d 830, 840 (8th Cir. 2017) ("Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." (citation omitted)).

Boen further argues that the admission of the policies confused the jury, in violation of Federal Rule of Evidence Rule 403, by allowing the jury to conflate a violation of the policies with a violation of the Constitution's prohibition against unreasonable force. But the district court issued numerous limiting instructions at trial and in the jury's final instructions. See United States v. Walker, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction diminishes the danger of unfair prejudice arising from the admission of the evidence."). For example, when admitting the inmate-rights policy, the district court instructed:

> So you are about to hear evidence, or see what has been received into evidence as the inmate rights policy as just described . . . . In considering this . . . policy in place at the Franklin County Jail as described, you should not consider this inmate rights policy when you decide whether the defendant's use of force was objectively reasonable or unreasonable, but you may consider the inmate rights policy when you decide what the defendant intended at the time that he acted, which is to say as proof of the second element on willfulness, and that's the same second element in each of the three counts.

R. Doc. 95, at 224:24-225:10. The district court's thorough instruction clearly addressed Boen's underlying concerns of jury confusion. Moreover, "[w]e presume that jurors follow the district court's instructions." United States v. Weckman, 982 F.3d 1167, 1174 (8th Cir. 2020). Accordingly, the district court did not abuse its discretion in admitting the jail policies because it carefully instructed the jury as to the purposes for which it could consider the evidence.

III.

Boen next appeals the district court's denial of his motion for a judgment of acquittal or new trial. Boen argues that the district court erred by finding (1) that § 242's "bodily injury" element could be satisfied by a de minimis injury and (2) that the evidence was sufficient to sustain the jury's verdict.

A.

Boen contends that the district court erroneously concluded that a de minimis injury could satisfy § 242's "bodily injury" element. While he presents this challenge through the appeal of his motion for a judgment of acquittal—which we review de novo, see United States v. Peters, 462 F.3d 953, 957 (8th Cir. 2006)—it is properly understood as an objection to the jury instructions, i.e., how "bodily injury" was defined. "We typically review a challenge to jury instructions for an abuse of discretion. Where a party fails to object to an instruction at trial, however, we review only for plain error." Weckman, 982 F.3d at 1174 (citation omitted). While Boen contended at oral argument that he had objected to the instruction before the district court, he has failed to identify any such objection in the record. And, after careful review of the same, we have been unable to locate any indicia of an objection. See ASARCO, LLC v. Union Pac. R.R. Co., 762 F.3d 744, 753 (8th Cir. 2014) ("'Judges are not like pigs, hunting for truffles buried in briefs' or the record." (citation omitted)). Having found none, we review Boen's challenge to the jury instruction for plain error. United States v. Fast Horse, 747 F.3d 1040, 1041 (8th Cir. 2014).

Under plain error review, "we have the discretion to reverse the district court if the defendant shows '(1) an error, (2) that was "plain," (3) "affects substantial rights," and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings."'" Id. at 1042 (citation omitted). "A jury instruction is plainly erroneous if it misstates the law." Weckman, 982 F.3d at 1175 (citation omitted). We will not reverse, however, if the instruction "adequately advise[s] the

jury of the essential elements of the offenses charged and the burden of proof required of the government," when taken as a whole. Id. (citation omitted).

Here, Instruction No. 11 defined "bodily injury" as: "(A) a cut, abrasion, bruise, burn or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ, or mental faculty; or (E) any other injury to the bodily [sic], no matter how temporary." R. Doc. 89, at 14. Section 242 does not define "bodily injury." Instead, the district court procured the instruction (which does not define a requisite degree of injury) from the Eighth Circuit Manual of Model Jury Instructions. And while the model jury instructions are "not binding on the district courts," United States v. Owens, 966 F.3d 700, 705 (8th Cir. 2020) (citation omitted), they may be beneficial, especially when, as here, the instructions are promulgated from other statutes. The definition for "bodily injury" provided in the model instructions is the same as used in 18 U.S.C. §§ 249 (hate crime acts), 831(f)(5) (prohibited transactions involving nuclear materials), 1365(h)(4) (tampering with consumer products), 1515(a)(5) (definitions for certain provisions regarding obstruction of justice), and 1864(d)(2) (hazardous or injurious devices on federal lands).

Boen cites a single Fifth Circuit excessive-force case to support his position. See United States v. Brugman, 364 F.3d 613, 618 (5th Cir. 2004) ("The government need only show that the victim suffered 'some' injury although this requires proof of more than '*de minimis* injury[.]'" (citation omitted)). However, a majority of our sister circuits have adopted or accepted the definition used by the district court here, which does not require a greater than de minimis injury. See, e.g., United States v. Bailey, 405 F.3d 102, 111 (1st Cir. 2005) (adopting the definition); United States v. Tyler, 124 F. App'x 124, 127 (3d Cir. 2005) (same); United States v. Perkins, 470 F.3d 150, 160-61 (4th Cir. 2006) (same); United States v. Gonzales, 436 F.3d 560, 575 (5th Cir. 2006) (applying the majority-accepted definition in non-excessive-force cases), abrogated on other grounds by United States v. Vargas-Ocampo, 747 F.3d 299, 301 (5th Cir. 2014); United States v. Wilson, 344 F. App'x 134, 142 (6th Cir. 2009) (accepting the definition when defendant did not dispute its application

-11-

to the "bodily injury" enhancement on appeal); United States v. DiSantis, 565 F.3d 354, 360-62 (7th Cir. 2009) (upholding similar definition when reviewing instructions for plain error); United States v. LaVallee, 439 F.3d 670, 687-88 (10th Cir. 2006) (accepting the definition when defendant did not dispute its application to the "bodily injury" enhancement on appeal); United States v. Myers, 972 F.2d 1566, 1572-73 (11th Cir. 1992) (upholding the definition upon de novo review of jury instructions). But see United States v. Cote, 544 F.3d 88, 100-01 (2d Cir. 2008) (requiring a greater than de minimis injury).[4]

Accordingly, based on the analogous definitions found in the criminal code and the decisions from our sister circuits supporting the instruction given here, we find that the district court did not err, much less plainly so, in defining "bodily injury."

B.

Boen further argues that the evidence was insufficient to support his convictions. We review a denial of a motion for a judgment of acquittal de novo and, in doing so, "view[] the entire record in the light most favorable to the government, resolv[ing] all evidentiary conflicts accordingly, and accept[ing] all reasonable inferences supporting the jury's verdict." United States v. Broeker, 27 F.4th 1331, 1335 (8th Cir. 2022) (alterations in original) (citation omitted). We will reverse only "if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." Id. (citation omitted). "To secure a conviction for deprivation of rights under color of law, the Government must prove that a defendant acted '(1) "willfully" and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States,'" United States v. Hewitt, 999 F.3d 1141, 1148 (8th Cir. 2021) (citation omitted), and—because the Government sought an enhancement under the

---

[4]The parties have not offered, nor have we found, any decisions directly addressing the issue from the Ninth or D.C. Circuits.

statute—(4) that "bodily injury result[ed] from the acts committed in violation" of the statute, 18 U.S.C. § 242. On appeal, Boen argues only that the evidence was insufficient to support the bodily injury enhancement on either count.

1.

As to Count 2, which relates to Boen's actions against English, there is ample evidence to support the jury's verdict. English testified that Boen slammed him to the floor from his chair, after which Boen grabbed his hair and angrily lectured him. As a result, English hit his head on the floor. English further noted that he experienced substantial hair loss in the assault and reported bruising on his chest days later. Hutchison did not recall English's injuries but gave a similar account of events. On appeal, Boen does not deny that he flipped English out of his chair, poked his chest, and grabbed his shirt and hair; he contests only whether English suffered a greater-than-de-minimis injury. However, as noted above, the district court did not plainly err in allowing the jury to consider de minimis injuries, and based on these facts, a reasonable jury could easily have found that English experienced bodily injury in the form of "physical pain," as described in Instruction No. 11. Cf. United States v. Inman, 558 F.3d 742, 748 (8th Cir. 2009) (acknowledging that sufficiency of the evidence is measured against the instructions charged to the jury when the defendant fails to object to the instructions before the district court). Accordingly, the evidence was sufficient to support Boen's conviction on Count 2.

2.

As to Count 3, which relates to Boen's actions against Greene, there is likewise ample evidence to support Boen's conviction. Ball testified that Boen struck Greene in the face four or five times and that blood was visible around Greene's mouth after the blows. A dispatcher testified that he heard the blows roughly 30 to 50 feet away. Miller testified that Boen struck Greene another three to four times roughly an hour later.

Boen first argues that it was physically impossible for him to have spanned the five-foot distance of the shower room to hit Greene's face as Greene lay on the floor. While both Ball and Miller testified that they witnessed Boen attack Greene, Boen argues that their testimony is rebutted by "physical facts" that were "incontrovertibly established" at trial. See Wood v. United States, 342 F.2d 708, 713-14 (8th Cir. 1965). But these purported "physical facts" regarding the dimensions of the shower room are merely the product of estimations elicited from lay testimony. While the dispatcher testified that someone could not have reached the back of the shower room to hit an inmate lying on the floor, Miller testified that he could have touched the far-side wall, which he believed to be only four feet away from the entrance. Testimony that Greene may have been sitting up and that Boen "leaned into the room" makes it more than plausible that Boen shortened the purportedly impossible striking distance to assault Greene. In light of these two plausible theories, the jury was free to accept Ball's and Miller's testimony and thus reject the dispatcher's testimony that, at best, called into question the possibility of Boen's actions. See United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004) ("If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." (citation omitted)).

Second, Boen again raises his de minimis injury argument. He points out that Greene told the nurse that his visible injuries resulted from an earlier altercation. Notwithstanding this statement—the nurse testified that Boen was present for Greene's examination—the jury had ample evidence to infer that the multiple strikes Boen inflicted upon Greene caused physical pain, especially when those strikes were heard over 30 feet away. Accordingly, viewing the evidence in the light most favorable to the jury's verdict, the evidence was sufficient to support Boen's conviction on Count 3.[5]

---

[5]Boen filed his motion in the alternative as a motion for a new trial, which we would review "under the stricter, abuse-of-discretion standard." Broeker, 27 F.4th at 1335. The district court accurately noted that it need not weigh the evidence in the light most favorable to the verdict in reviewing Boen's motion for a new trial. See id. at 1337. It nonetheless found that substantial evidence supported the jury's

IV.

Finally, Boen challenges his sentence, arguing (1) that the district court erred in applying the obstruction-of-justice enhancement and (2) that his sentence is substantively unreasonable. We first address the alleged procedural error and then turn to the substantive reasonableness of the sentence. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

A.

Boen asserts that the district court committed procedural error by improperly calculating the Guidelines range, i.e., applying the obstruction-of-justice enhancement under USSG § 3C1.1. "When considering whether there is procedural error, we review the district court's factual findings for clear error and its application or interpretation of the Guidelines *de novo*." United States v. Halter, 988 F.3d 1042, 1047 (8th Cir. 2021). Section 3C1.1 applies a two-level enhancement if, in part, "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." "This includes 'threatening, intimidating, or otherwise unlawfully influencing' a witness." United States v. Maurstad, 35 F.4th 1139, 1146 (8th Cir. 2022) (citation omitted). "[T]he Guidelines have a broad view of obstruction—it can vary in nature and seriousness, and does not require a direct threat." Id. Coaching a witness can constitute an obstruction of justice. See United States v. Jensen, 834 F.3d 895, 899-900 (8th Cir. 2016) (affirming the district court's application of USSG § 3C1.1 when the defendant told the witness what to say in a subsequent interview with law enforcement).

---

verdict and that there was no "shape, form, or fashion where the [j]ury's verdict would be tantamount to a miscarriage of justice," as required by Federal Rule of Criminal Procedure 33. Based on our review of the evidence, we find that the district court did not commit "a clear and manifest abuse of discretion" in denying Boen's motion for a new trial. United States v. Dowty, 964 F.3d 703, 708 (8th Cir. 2020) (citation omitted).

Here, Boen argues that the district court erred in relying on the recorded phone call between Boen and Ball because Boen merely stated uncontested facts: (1) that no one saw the incident and (2) that it is Boen and Ball's word against everyone else's. While that may be true on paper, the district court noted that the context was significantly more obstructionist. Based on the entirety of Ball's testimony, the district court found that the context of the statements was: "[W]e're friends and we have the ability to align our stories, and since we were the only eyewitnesses, there wouldn't be anyone else to contradict what we say. . . . [A]s long as we tell the same story, we don't have anything to be worried about." R. Doc. 124, at 23. Moreover, while Boen focuses on the recording, Ball further testified that after Boen discovered that the Government had issued grand jury subpoenas, he explicitly told Ball "that if anyone had asked, that Mr. Greene jumped up and got in his face and he had [to] put him back down," facts which are contrary to the evidence presented at trial. Based on this evidence, the district court's finding that Boen attempted to influence Ball's testimony was not clearly erroneous and sufficiently supports the district court's application of the obstruction-of-justice enhancement. Jensen, 834 F.3d at 899-900.

## B.

Having determined that the district court did not commit procedural error, we turn to the substantive reasonableness of Boen's sentence. "When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" Feemster, 572 F.3d at 461 (citation omitted). We will find that a district court has abused its discretion if it "(1) 'fail[ed] to consider a relevant factor that should have received significant weight'; (2) 'g[ave] significant weight to an improper or irrelevant factor'; or (3) 'consider[ed] only the appropriate factors but in weighing those factors commit[ted] a clear error of judgment.'" Id. (citation omitted). "A within-Guidelines sentence," as here, "is presumptively reasonable." United States v. Barbee, 44 F.4th 1152, 1157 (8th Cir. 2022).

The district court sentenced Boen to a within-Guidelines sentence of 48 months' imprisonment.  Boen argues in cursory fashion that his sentence is "greater than necessary," see United States v. Toothman, 543 F.3d 967, 971 (8th Cir. 2008), given the alleged de minimis nature of his victims' injuries and the purported bias of the witnesses at trial.  However, the district court discussed the § 3553(a) factors in depth and considered the proffered mitigating and aggravating circumstances in crafting the sentence.  See United States v. Noriega, 35 F.4th 643, 651 (8th Cir. 2022) ("[A] district court has 'wide latitude' to assign weight to give[n] factors, and '[t]he district court may give some factors less weight than a defendant prefers or more weight to other factors, but that alone does not justify reversal.'" (second and third alterations in original) (citation omitted)).  Given the district court's thorough sentencing analysis—and Boen's inability to identify an abuse of discretion in the district court's weighing of the § 3553(a) factors—Boen has not overcome the presumption of reasonableness afforded to his sentence.

V.

For the foregoing reasons, the judgment of the district court is affirmed.

_____

-17-