# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1661
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Charles Deberry

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 20, 2024
Filed: May 15, 2025

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

A jury convicted Anthony Charles Deberry of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) and 924(a)(2), and the district court[1] sentenced him to 108 months in prison. Deberry argues that the district court misplaced the burden

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

of proof when it required him to prove his justification defense by a preponderance of the evidence and erroneously enhanced his sentence for possessing a firearm in connection with another felony offense and for obstructing justice. We affirm his conviction and his sentence.

Deberry was kicked out of Born's Bar in St. Paul, Minnesota one afternoon for arguing with a man named Turtle and smashing his phone. Deberry loitered outside the bar for a while—muttering and pacing and sometimes shouting about Turtle and "popping somebody"—but eventually left. Surveillance video from 9:20 p.m. shows Deberry returned and walked around the sidewalk in front of the bar with both hands down the front of his pants. A witness who walked by testified that Deberry had a gun. At about 9:21 p.m., two men left the bar and Turtle followed. Deberry followed them just outside the view of cameras.

One of the other men testified that Deberry pulled a gun from his waistband and pointed its laser sight at Turtle. An audio recording and forensic testimony suggested six or seven gunshots were fired in rapid succession from at least three different guns. Seconds later, the surveillance video shows a wounded Deberry reentering the frame. He ran toward the bar, ducked behind a car, and pointed the gun at the men before putting it under another parked car. The gun still had the laser sight on it when the police recovered it. The Government theorized that the shootout started because Deberry—still angry with Turtle—returned to Born's Bar and tried to shoot him.

Deberry tells a different story. He testified that he returned to the bar to pick up his girlfriend and that he didn't have a gun. He claimed that one of the men who walked past him asked for a lighter before pulling a gun. The man shot Deberry, and the bullet pierced his left hand as he tried to grab the gun. Deberry said he eventually wrestled the gun away but not before being shot two more times. Deberry also testified that he was not trying to hide the gun when he put it under the car, but was afraid police would "shoot [him] too" if they found him armed at the scene. Deberry was badly injured from multiple gunshot wounds but one of the men in the

group and a bystander testified that Deberry never got close enough to wrestle the gun away. Nonetheless, Deberry insists that he was justified in possessing the gun and acted in self-defense.

The district court instructed the jury that to convict Deberry of being a felon in possession of a firearm, the Government had to prove beyond a reasonable doubt that Deberry had been convicted of a felony, he knowingly possessed a firearm, the firearm was in or affecting interstate commerce, and he knew of his status as a felon when he possessed the firearm.[2] *See United States v. Milk*, 66 F.4th 1121, 1136 (8th Cir. 2023). The court also instructed the jury on Deberry's justification defense. Over defense counsel's objection, the district court told the jury that Deberry had to prove by a preponderance of the evidence that (1) he "was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury"; (2) he "had not recklessly or negligently placed himself in a situation where it was probable that he would" be forced to commit a criminal act; (3) he "had no reasonable, legal alternative to violating the law"; and (4) "a direct causal relationship [could] be reasonably anticipated between the criminal action and the avoidance of the threatened harm." *See United States v. Poe*, 442 F.3d 1101, 1104 (8th Cir. 2006) (citation omitted) (cleaned up). The jury convicted.

Deberry argues that the district court got the burden of proof wrong. He claims he was "forced" to possess the firearm when he took it as a "reflexive reaction" to a "sudden exigency." Deberry argues that these self-defense-like circumstances negated his knowing possession of the firearm, meaning the Government should have had the burden to disprove his justification defense. We review *de novo*, since Deberry maintains the district court's instructions denied him a legal defense. *See United States v. Bruguier*, 735 F.3d 754, 757 (8th Cir. 2013) (en banc).

---

[2]Deberry stipulated to the first and third elements.

-3-

Deberry is right that a jury instruction is unconstitutional if it shifts the burden to the defendant to disprove an element of the charged offense. *Patterson v. New York*, 432 U.S. 197, 215 (1977); *Stump v. Bennett*, 398 F.2d 111, 118 (8th Cir. 1968). But even if we assume that there is a justification defense to a felon in possession offense (as we have for decades), *e.g.*, *United States v. Hoxworth*, 11 F.4th 693, 694 (8th Cir. 2021); *United States v. Stover*, 822 F.2d 48, 50 (8th Cir. 1987), and that Deberry justifiably possessed the firearm, we do not agree that the defense negates or contravenes Deberry's knowing possession of the firearm.

Deberry claims he grabbed the gun out of fear for his life and carried it with him as he ducked for shelter. Even if we accept that is what happened off camera, Deberry necessarily knowingly—even if briefly—possessed a firearm. *See United States v. Becerra*, 958 F.3d 725, 730 (8th Cir. 2020) ("Knowing possession, regardless of motive, is all that matters."). So Deberry's claimed justification does not negate his knowledge that he possessed the firearm but rather could justify his knowing possession such that he could not be held criminally liable if the jury believed his testimony. *See United States v. Leahy*, 473 F.3d 401, 408 (1st Cir. 2007) ("In a felon-in-possession case (unlike in, say, an assaultive crime), evidence of facts concerning self-defense neither contradicts nor tends to disprove any element of the charged crime."); *Dixon v. United States*, 548 U.S. 1, 7 (2006) ("Like the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense [under § 922(g)] requires a defendant to have acted knowingly or willfully; instead it allows the defendant to avoid liability because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present." (citation omitted) (cleaned up)). Because Deberry's claim of self-defense does not negate an element of the offense, the district court did not err by instructing the jury that Deberry had the burden to prove his justification defense.

As for his sentence, Deberry argues that the district court erred in applying enhancements for "us[ing] or possess[ing] any firearm or ammunition in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B), and for obstructing justice,

U.S.S.G. § 3C1.1.  We review the district court's factual findings for clear error and interpretation of the Guidelines *de novo*.  *United States v. Bailey*, 85 F.4th 891, 894 (8th Cir. 2023); *United States v. Kock*, 66 F.4th 695, 706 (8th Cir. 2023).

The district court found that Deberry used or possessed a firearm in connection with the Minnesota felony offenses of reckless discharge of a firearm within a municipality, Minn. Stat. § 609.66 subd. 1a(a)(3), and second-degree assault, Minn. Stat. § 609.222.  For the § 2K2.1(b)(6)(B) enhancement to apply, the Government must prove by a preponderance of the evidence that another felony offense was committed and that use or possession of the firearm facilitated the other felony and must negate any affirmative defense by a preponderance of the evidence. *Bailey*, 85 F.4th at 894.

The surveillance video of Deberry turning and pointing the gun at the group of men in a street with several bystanders around—especially when considered with the recovered firearm and casings, audio recording of successive shots, and forensic testimony—supports the district court's conclusion that he recklessly discharged a firearm.  *State v. Engle*, 743 N.W.2d 592, 593 (Minn. 2008) (Reckless discharge of a firearm within a municipality "does not require proof of an intentional discharge but rather requires proof of a conscious or intentional act, in connection with the discharge of a firearm, that creates a substantial and unjustifiable risk that the actor is aware of and disregards.").  We also see no clear error in the district court's finding that Deberry committed second-degree assault and was not entitled to self-defense as the initial aggressor.  The surveillance video, audio recording, recovered casings, and forensic and witness testimony all support the theory that Deberry waited outside the bar with a gun tucked into his waistband, followed the men down the sidewalk, and brandished his gun and shot at them.  *See State v. Hough*, 585 N.W.2d 393, 395 (Minn. 1998) (describing second-degree assault); *State v. Radke*, 821 N.W.2d 316, 324 (Minn. 2012) (listing elements of self-defense).

Deberry cites no case law supporting his proposition that the district court was required to accept the least-culpable version of the facts that the jury could have

found to convict him. Our review asks only whether the district court's findings were supported by the record, and we conclude that they were. *See United States v. Watley*, 46 F.4th 707, 716–17 (8th Cir. 2022).

Deberry lastly argues that the district court improperly enhanced his sentence for obstructing justice, U.S.S.G. § 3C1.1. While awaiting trial, Deberry gained access to police reports from the shooting. In a cellphone video taken by a third party, Deberry is shown identifying witnesses set to testify at trial, describing witnesses' anticipated testimony, and reading aloud witnesses' statements. The district court found "Deberry's purpose in participating in the video's creation was to threaten, or intimidate, or attempt to threaten or intimidate, a witness or witnesses." Deberry argues that we should remand his case for resentencing because a third-party created the video and the Government didn't prove that Deberry disseminated the video to witnesses.

The district court did not clearly err in finding that this was obstruction. *See United States v. Boen*, 59 F.4th 983, 996 (8th Cir. 2023) (Obstruction of justice "includes threatening, intimidating, or otherwise unlawfully influencing a witness." (citation and quotation marks omitted)); *see also* U.S.S.G. § 3C1.1 cmt. 4(A). The video shows that Deberry knew the third party was recording him because he held up the reports for the videographer to zoom in on certain parts of witness testimony and offered to "show [the] paperwork" of a witness to the videographer. He also specifically called out witnesses set to testify against him by name and read aloud witness testimony. And law enforcement testified at sentencing that a witness who was mentioned in the video refused to testify if the video was mentioned at trial. Under the Guidelines' broad view of obstruction, *see Boen*, 59 F.4th at 996, it was reasonable for the district court to infer that Deberry was highlighting witness testimony for the camera intending to unlawfully influence or intimidate the witnesses set to testify in his case, U.S.S.G. § 3C1.1.

Affirmed.

_____